Railway v. Shinn.

sixty days wages, claimed to be exempt, is less than the amount exempt to him under the Constitution of the State, and that he does not own sufficient other personal property, which, together with the said sixty days' wages, would exceed in amount the limits of said constitutional exemption." Act Nov. 27, 1875.

The appellant *pro se.*

If appellee with his family resided in Texas, he was a non-resident of Arkansas, although he claimed his domicile in this State. *43 Ark., 547; 63 Iowa, 104; Drake on Att., sec. 65.*

The Legislature could not extend the exemption laws to non-residents. *11 S. C., 333; 32 A. M. Rep., 476; Cooley Con. Lim., pp. 78–94; 24 Ark., 161; 1 Wade Att., sec. 215.*

*Scott & Jones,* for appellee.

RAILWAY v. SHINN.

1. CONTRACTS: *Construction of written instrument.*

Where the language of a written contract is capable of more than one interpretation the court will look to the subject matter of the agreement, the circumstances surrounding the parties at the time it was made, and their sabsequent acts under it, for the purpose of giving to their written language the meaning they intended it should have.

.2. SAME: *Same.*

> The defendant company, owning and operating a railway between the town of R. and a point on the Arkansas River opposite the town of D., ran a line of wagons from the terminus of its track for the transportation of freights across the river to its warehouse at D., and sold passenger tickets and signed bills of lading for freight to and from that place. While thus engaged the company entered into a written contract with the plaintiff, by which the latter agreed "to ferry all passengers, freight, baggage, mail * * * and express matter * * " presented for ferriage by the defendant, together with such conveyances as might be necessary to transfer the same across the river; and in consideration of such ferriage the company agreed to pay the plaintiff "one-fifth of the actual gross earnings of the railway * * * on all passengers, freight, mail and express matter * * * carried across the river." Under this agreement the defendant transported all freights, mail and express matter across the ferry at its own cost, and accounted to the plaintiff for one-fifth of the gross amount thus earned. But it let the contract for hauling passengers between the terminus of the track and D. to a transfer company, the vehicles of which were ferried by the plaintiff without charge, under the impression that they were part of the defendant's line. The fare on the railway proper between D. and R. was fifty cents, to which was added twenty-five cents for a hack ticket, making the entire fare between the two towns seventy-five cents. The defendant sold the hack tickets, and out of the proceeds paid the transfer company twenty cents for their services, and retained five cents as commission and ferriage. It accounted to the plaintiff for ten cents on each passenger, but refused to account for more of the amount received for hack fare than one-fifth of the five cents retained on the sale of each ticket. HELD: That the term "gross earnings of the railway," as used in the contract, included the whole amount earned by the transfer company.

APPEAL from *Johnson* Circuit Court.

J. E. CRAVENS, Special Judge.

*U. M. & G. B. Rose*, for appellant.

As to the meaning of "earnings," see *Webster and Worcester Dicts.* The omnibus fare was not an earning within this definition ; nothing of profit, or reward, or wages was added to the the railroad receipts, except the five cents commissions. See *99 U. S., 402.* Gross earnings cannot include the profits made by a separate and distinct company, in which the railway did not share.

*G. W. Shinn*, for appellee.

Under the contract appellee is entitled to one-fifth of the gross earnings. The railway charges seventy-five cents for a ticket from Russellville to Dardanelle. Instead of running the transfer themselves, they farm it out and pay twenty cents for every passenger transferred; they receive twenty-five cents, of which appellee is certainly entitled to one fifth. The twenty-five cents is part of the "gross earnings" of the railway.

COCKRILL, C. J. The only question involved in this case is the true construction of the terms of a written contract. The record shows substantially the following state of facts:

The appellant owns a short line of railway running between Russellville to a point on the Arkansas river opposite the Town of Dardanelle. Shinn, the appellee, is proprietor of a steam ferry between Dardanelle and a point near the terminus of the railroad track. The company is known as the Dardanelle and Russellville Railway Company, and sells tickets to passengers and issues bills of lading for freight from the Town of Dardanelle to Russellville and from Russellville to Dardanelle. It maintains a passenger ticket office, and a warehouse for the receipt of freights in the latter town. To facilitate the transaction of its freight and passenger business, it entered into a written agreement with Shinn, by the terms of which the latter agreed (to quote from the contract) "to ferry all passengers, freight, baggage, mail, express matter, live-stock and other kinds of freight, presented for ferriage by the party of the second part (the company) in the course of transportation by it, together with such conveyances as may be necessary to convey and transfer the same with dispatch and safety across the Arkansas river. * * * * For and in consideration of which ferriage, and the services in regard thereto, the party of the second part hereby agrees to pay the party of the first part (Shinn) one-fifth of the actual gross earnings of the railway, the party of the second part, on all passengers, freight, mail, express or other matter of every kind and nature whatsoever, carried across the said river either way."

Under the agreement the company transported its freights from the terminus of its track, across the ferry to its destination in Dardanelle and from Dardanelle to the railway at its own cost, and accounted to Shinn for one-fifth of the gross amounts earned thereby, and for the same proportion of the gross receipts for mail and express matter. It let the contract to haul its passengers to a transfer company ; which ostensibly charged twenty-five cents for transporting each passenger to or from the terminus of the track and points in the Town of Dardanelle. The passenger vehicles were carried over the ferry without charge by Shinn under the impression that they were acting for the railway company, as a continuation of its line. The railway company sold the hack tickets and out of the proceeds paid the transfer company twenty cents for their services and retained five cents as a commission for selling such tickets and as pay for the transfer company's ferriage for their hacks. The fare on the railway proper, between Dardanelle and Russellville, was fifty cents, which sum added to the hack fare made seventy-five cents for a complete ride between the two towns. Passengers were. not required to purchase the hack tickets, and the ralway fare entitled them to free ferriage without transportation, from the terminus of the track to the ferry. The railway company accounted to Shinn for one-fifth of the amount collected by them as railway fare, that is, ten cents on each passenger and one-fifth of the five cents retained by them on the sale of each hack ticket.

Shinn contended that he was entitled to five cents for each hack ticket sold, as being a part of the gross earnings contemplated by the contract. The railway company insisted that the transfer company was not a part of its system, and what it earned was a matter of no concern to Shinn. The latter instituted this suit to recover the difference between the amount he received and what he claimed. The cause was tried without a jury before the Circuit Judge, who heard testimony establishing the facts above detailed, and found therefrom that Shinn

Railway v. Shinn.

was entitled to recover. The only ground assigned for a new trial is, that the finding is not sustained by the facts.

The duty of the Judge was to ascertain what was meant by the parties by the use of the terms "gross earning of the railway." To do that it was necessary that he should put himself as nearly as possible in the position of the parties at the time of making the contract, and to inform himself of everything which could legally elucidate the question of their intention; for the foremost rule of interpretation is to give to language employed by the parties to a contract the meaning they intended, if it is capable of more than one interpretation. Could the Circuit Judge legally reach the conclusion that the terms "gross earning of the railway," included the earnings of the transfer company?

1. CON-
TRACTS:
Construc-
tion of writ-
ten instru-
ment.

The railway company was actually engaged in a transportation business other than that carried on by the railway proper; that is to say, it ran a line of wagons from the termination of its track to the Town of Dardanelle, in connection with and as an appendage to its railway business, in order to reach the destination its name indicated, and to fulfill the contracts for transportations, which it was in the habit of entering into after as well as before its stipulation with Shinn. It may not be strictly within the corporate powers of the railway to carry on a transportation business between its terminus and Dardanelle, but if such a business is operated by it, and a charge is made over the line as for one indivisible trip, what is received by the company as compensation therefor would be earnings of the railway company, for that is the style under which the concern is operated. An individual who contracted with the company about its earnings would be justified in that construction.

2. SAME:
Same.

The earnings of a railway, say the Supreme Court of the United States, in the case of the *Union Pacific Railway v. United States, 99 U. S., 419,* "must be regarded as embracing all the earnings and income derived by the company from the railway

LII.—7.

proper, and all the appendages and appurtenances thereof, including its ferry and bridge * * *, its cars and all its property and apparatus legitimately connected with its railroad."

That was the view entertained by the parties to the contract in dispute, as is shown by their division of the gross earnings for freight, etc., carried by the company. But by the terms of the contract freight and passengers are put on exactly the same footing. It will not do, therefore, for the company to say that Shinn is entitled to one-fifth of the gross earnings received for freight, but shall not participate in like manner in the gross earnings from passengers, unless they can show some reason other than the terms of the contract for the distinction. We do not understand that that is the position of the officers of the company who negotiated the contract with Shinn. They seem to assume that, because they have farmed out the privilege of running vehicles to transport passengers from the terminus of the road to the river, and thence into Dardanelle, and thus shifted the burden of that part of the trip to other shoulders— they may share with Shinn the net profit that is received by them on such transportation; and instead of paying him one-fifth of the gross sum received for such transportation, pay him one-fifth of the net earnings. But the non-ownership of the transportation company does not tend to alter the case so long as the transportation privilege is practically controlled or managed by the railway as part of its system. What is received from the passengers under the circumstances, is as much a part of the gross earnings of the company as what is received for freight transported over its railway and wagon line. The latter the company concedes, as we have seen, is covered by the contract. There is no proof in the record to indicate that the state of facts existing at the time the contract was made, would justify any distinction between the gross earnings from the freight and passengers. Shinn's testimony is to the effect that in carrying the passenger vehicles over his ferry without charge, he supposed they formed a continuation of

the railway line of business; the contract contemplates that such vehicles may be used by the company for that purpose, and there is nothing except the company's subsequent refusal to pay that tends to show that either party contemplated that such a distinction should exist.

We think the Circuit Judge was warranted in concluding that the gross amount earned in the carriage of passengers between Russellville and Dardanelle, was contemplated in the use of the terms adopted by the parties.

We do not hold that the railway company is under obligation to Shinn to run a transfer business in connection with its railway, or that it may not run such a business south of the ferry into the Town of Dardanelle without allowing him to participate in the receipts. Those questions are not before us.

Affirmed.