:1. Taxation of Railroad Companies—Gross Earnings—Construction of Statute.
Under Laws 1896, c. 908, § 184, providing that every steam surface railroad company shall pay an annual tax "upon its gross earnings within the state, which shall include its gross earnings from its transportation or transmission business originating and terminating within the state, but shall not include earnings derived from business of an interstate character," the gross earnings of a company of every kind are taxable, excepting only those derived from interstate commerce.

:2. Same—Ultra Vires—Who may Urge.
A corporation taxed on its earnings cannot complain that a part of the earnings was derived from a business in which it is not authorized to engage.

:3. Same—Double Taxation—Constitutional Law.
The question of double taxation is one of expediency, for the consideration of the legislature, and not of power, for the consideration of courts.

Certiorari by the people, on the relation of the New York Central & Hudson River Railroad Company, against James A. Roberts, state comptroller. Determination of the comptroller confirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, and MERWIN, JJ.

Brown & Wells (David Willcox, of counsel), for relator.

T. E. Hancock, Atty. Gen. (G. D. B. Hasbrouck, of counsel), for respondent.

HERRICK, J. The contention of the relator is that "the 'gross earnings tax' is imposed merely upon the earnings of transportation and transmission corporations from the exercise of their franchise to carry on the business of transportation and transmission, and not upon their earnings generally, or from other sources." I do not think that contention can prevail. The relator is taxed pursuant to the provisions of chapter 908 of the Laws of 1896. Section 184 of that act provides that:

"Every corporation and joint-stock association formed for steam surface railroad, * * * shall pay for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this state, an annual excise tax or license fee which shall be equal to five-tenths of one per centum upon its gross earnings within the state, which shall include its gross earnings from its transportation or transmission business originating and terminating within this state, but shall not include earnings derived from business of an interstate character."

The wording of the statute does not limit its gross earnings to be taxed to gross earnings from its transportation or transmission business. The words, "which shall include its gross earnings from its transportation or transmission business," plainly mean that there are other earnings than those arising from such kinds of business that are to be included. If there are not other earnings, then there would be nothing to include with them. The language used is not that of exclusion, but, taking it altogether, shows the plain intent of the legislature to include earnings of every kind, except those aris-

ing from interstate commerce. By "gross earnings," it seems to me that the statute means all receipts arising from or growing out of the employment of its capital, whether that capital is employed in the transportation and transmission business or otherwise.

The franchise of the relator is one for railroad purposes,—that is, to engage in the transportation and transmission business,—and it has such powers as are necessary to carry on that business, or that are fairly incident to it. Some of the stocks and bonds, the income from which has been charged up by the comptroller as a part of its gross earnings, may be stocks and bonds of corporations which are feeders to the relator, and its holding of their stocks and bonds may be for the purpose of controlling such corporations, so that they shall act in harmony and conjunction with it, and the purchasing and holding of such securities for such purposes may perhaps be said to be incidental to its business. If so, the receipts derived therefrom are correctly classed as part of its gross earnings as a railroad corporation; but if, on the other hand, they are not held for any such purpose, but are investments made from its surplus capital, the income nevertheless constitutes a part of the earnings of its capital stock, and the relator cannot be heard to complain because it was derived from a source and from a kind of business it was not authorized to engage in. People v. Campbell, 144 N. Y. 166, 38 N. E. 990.

Neither do I think the contention of the relator, that including its income from stocks and bonds of other corporations as a part of its gross earnings results in double taxation, because such corporations are subjected to, and presumably have paid a corporation tax, can be sustained. The rule against double taxation is a rule of. legislation, and not of law. It is a question of expediency, and not of power; and while the court will not infer an intention to impose a double tax, but rather uphold the construction of a statute which relieves property from double taxation, when the statute is susceptible of such a construction without forcing, still the power of the legislature in that respect is undoubted. Indirectly, perhaps, this construction may result in taxing the earnings of the corporations whose stocks and bonds the relator holds, twice; but where there is an evident intention, as in this case, to tax all the earnings and revenue of corporations, such as the relator, I do not think that the court is justified in adopting a construction that will relieve such corporations from a portion of their taxes, because they have chosen for business purposes to invest a portion of their capital in other corporations. The relator's earnings, as such, from such investments, are separate and distinct from the earnings of the companies in whose securities they have invested.

The determination of the comptroller should be confirmed, with $50 costs and disbursements. All concur.