DETROIT, GRAND RAPIDS & WESTERN RAILROAD CO. *v.* COMMISSIONER OF RAILROADS.[1]

1. RAILROAD COMPANIES—TAXATION—GROSS INCOME.
    Sums received by a railroad company for switching, rental of tracks and terminals, and interest on loans and deposits, are a part of its gross income, and taxable as such, under Act No. 228, Pub. Acts 1897.

2. SAME—MILEAGE.
    Under Act No. 228, Pub. Acts 1897, requiring railroad companies to pay a specific tax, to be computed upon the gross income per mile of road "actually operated within this State," the computation should exclude tracks over which the company runs its trains, but which are operated by another company as a part of its own separate system.

*Mandamus* by the Detroit, Grand Rapids & Western Railroad Company against Sybrant Wesselius, commissioner of railroads. Submitted November 22, 1898. Writ denied December 28, 1898.

*Smith, Nims, Hoyt & Erwin,* for relator.

*Fred A. Maynard,* Attorney General, for respondent.

MONTGOMERY, J. This is an application for *mandamus*

---

[1] Rehearing granted July 11, 1899. Former decision affirmed December 12, 1899.

to compel the railroad commissioner to change the assessment made against the relator for the present year. The company's report showed an operation of 451 miles of road, and that its gross income was $1,316,739.50. The respondent required a further report, which was furnished, showing gross receipts for switching of $5,052; rental of approaches, tracks, and terminals, $5,445.12. The report also showed that relator received during the year interest on deposits, $5,052. These three last-named items were not included in the original amount of the gross receipts, and were added to the amount first reported in making the assessment. It further appears that the relator included, in its report of mileage operated, 4.6 miles from Detroit to Delray; 8.4 miles from Delray to Oak; 1 mile from Lansing to North Lansing; 7.3 miles from Paines, in the county of Saginaw, to the city of Saginaw; 15.5 miles from Grand Rapids to Sparta; and 34.2 miles from Sparta to Sheridan,—a total of 71 miles, over which relator ran its trains, but as to which road it did not have exclusive control. On the contrary, these lines of road were used by other railroad companies as a part of their several systems. Four questions are presented:

(1) Whether the item for switching is a part of the gross income.

(2) Whether the interest on deposits is to be so treated.

(3) Whether rental for tracks is to be so treated.

(4) Whether, in making the computation, the mileage should be that exclusively operated by the relator, or should include other roads, over which it ran any of its trains, to the extent so used.

1. The act under which the assessment is made is Act No. 228, Pub. Acts 1897, which provides for a specific tax upon the property and business of railroad companies operating within the State, computed in the following manner: Upon all such gross income, not exceeding $2,000 per mile of road actually operated within this State, 2½ per cent. of such gross income; on such gross income in excess of $2,000, and not exceeding $4,000, per mile, 3¼

per cent., etc. Was the sum received for switching a part of the gross income? We think it was. It is claimed by relator that this item, being paid or credited to relator by other railroad companies, and charged to their customers, would be included in the amounts reported by such other companies as their gross earnings. There was no direct proof of this before the railroad commissioner, although it was claimed in a letter filed by the president; but we do not well understand how this could be. Certainly, the relator received the amount of $5,000 and upwards for services in switching. It was certainly a part of its gross income, and if the charges were collected by other railroad companies, and paid over to the relator, it is not quite clear why it should be treated as a part of the gross incomes of such other companies, any more than the freight charges advanced. In relator's petition in this case it is represented that the sum set forth as received for switching was a sum received of its customers, and paid over to other companies, for switching done by such other companies, the relator simply acting as a collecting agent. If the relator had shown this by its report, we should not regard the sum so received as a part of the gross earnings; but we do not so read the report. If any mistake has been made in the report, doubtless the railroad commissioner will permit a correction.

2. We are unable to see why the sum received for rental of tracks and terminals is not a part of the gross income received by relator.

3. The report shows there was received by the relator, interest on loans and deposits, $5,013.90. It is contended that this was not a part of the gross income received in carrying on the business, within the meaning of the statute. We think it is clearly within the language of the statute.

4. The most important question in the case is whether, in computing taxes, tracks over which relator runs its trains, but not exclusively controlled by relator, should be computed as a part of its mileage. The language of the

statute is "road actually operated within this State." The contention of relator is that it is immaterial whether this company operates this road exclusively, or whether it is operated in conjunction with other companies. On the other hand, while it is conceded by respondent that the statute does not require that the road should be owned by the company, yet it is contended that it does require that if not owned, but merely operated, it shall be operated exclusively, and not merely in common with other companies. This would be the ordinary meaning of the language; and, looking somewhat to the consequences, it will be seen that, if the relator's contention be allowed, two connecting roads of equal mileage might, by running trains at intervals over the whole length of the two roads by mutual consent, each be said to be operating a road of the entire length, thereby materially reducing the rate of taxation. We think the contention of respondent's counsel should prevail.

It follows that the writ will be denied.

The other Justices concurred.