PEOPLE ex rel. BROOKLYN UNION GAS CO. v. MORGAN, Comptroller.

(Supreme Court, Appellate Division, Third Department.   June 27, 1906.)

TAXATION—CORPORATIONS—GROSS EARNINGS TAX—RAW MATERIAL INVEST-
MENT.

Tax Law, Laws 1896, p. 858, c. 908, § 186, requires certain corporations to pay to the state an annual franchise tax equal to five-tenths of 1 per cent. on their gross earnings from all sources within the state. *Held*, that where a gas company invested a portion of its capital in raw material, which was converted into a manufactured product, and came back to it as cash, being a part of the price of the gas sold to its consumers, such amount did not constitute gross earnings subject to taxation.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, § 633.]

Certiorari by the people, on relation of the Brooklyn Union Gas Company, against William J. Morgan, as comptroller of the state of New York, requiring respondent to certify and return to the office of the clerk of Albany county all his proceedings relative to a gross earnings tax imposed on relator for the year ending October 31, 1898, as re-quired by Tax Law, Laws 1896, p. 858, c. 908, § 186.   Reversed.

Argued before SMITH, CHESTER, KELLOGG, and COCH-RANE, JJ.

A. Dudley Britton, for relator.

Julius M. Mayer, Atty. Gen., and James G. Graham, for respondent.

COCHRANE, J.   The relator is required by section 186 of the Tax Law (Laws 1896, p. 858, c. 908) to "pay to the state for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this state an annual tax which shall be five-tenths of one per centum upon its gross earnings from all sources within this state."   The gross receipts of the relator for the year ending October 31, 1898, were $3,805,626.15, and on this amount the comptroller fixed the tax under the statute above referred to at five-tenths of one per cent., amounting to $19,028.13.   The relator is engaged in the business of manufacturing and selling gas.   For the production of such gas it purchases from time to time raw material consisting principally of coal and oil which is transformed into the manufactured product.   It appeared before the comptroller that at all times during the year ending October 31, 1898, a portion of the capital of the company was invested in such raw material, which from time to time was converted into the manufactured product and came back to the relator as cash, being part of the price of gas sold to the consumers. During the year in question the relator thus expended for raw material $947,546.28 which material was made into gas and sold to the consumers and is included in the gross receipts of the company of $3,805,626.15 as above stated.

The comptroller has thus fixed the tax not on the "gross earnings" of the relator, as required by the statute, but on its gross receipts. Capital of a corporation which must first be invested before it begins to earn anything cannot be said to be a part of the earnings of such corporation merely because it is turned into cash, and thus in one sense

becomes a receipt of the corporation. Earnings do not include capital, put are the productions or outgrowth of capital. In some cases like the one now under consideration the capital must be supplemented by labor, and such other expenditures as may be incidental to the development of the manufactured product from the raw material. Such incidental expenditures are doubtless part of the "gross earnings." If the coal in question had been used under the boilers for developing heat, such coal like labor would be merely an incidental expenditure in the process of converting the capital from one form into another, and should probably be included as a part of the "gross earnings" of the relator. But the evidence is that the coal in question was not used for generating heat, but was of a different kind and was converted into gas. In fixing the "gross earnings" of the relator there should therefore have been deducted from the gross receipts the cost of the raw material, which amounted to the said sum of $947,546.28. The relator claims that other deductions should have been made. Perhaps this is so as to some of the claims thus made, but the evidence before the comptroller was insufficient to form a proper basis for reduction. The entire proceeding should therefore be remitted to the comptroller for a rehearing.

The determination of the comptroller must be reversed, with $50 costs and disbursements to the relator, and the matter remitted to the comptroller for a new hearing. All concur.