STATE v. MINNESOTA & INTERNATIONAL RAILWAY COMPANY.[1]

November 27, 1908.

Nos. 15,992, 15,993—(30, 31).

**Gross Earnings of Railroads.**

The gross earnings which form the basis of the three per cent. tax, under the provisions of chapter 111, Sp. Laws 1873 (section 1667, G. S. 1894), are not limited to earnings derived from the operation of trains, but include all earnings received by such railway companies while performing work incidental to, or connected with, the business of transportation, and which may reasonably be considered within the scope of their corporate powers. Rule applied, and *held*:

**What are Gross Earnings.**

The following items constitute gross earnings:

[1] Reported in 118 N. W. 679, 1007.

**Switching Cars for Lumber Company.**

1. The amount received from lumber companies and other parties in moving, transferring and switching cars at loading works.

**Rental for Use of Equipment.**

2. The amount received for the use of the railway company's equipment, such as steam shovels, hoisting machinery, work trains,[2] cars and engines, including crews.

**Use of Work Trains.**

3. Money received from other railway companies for the use of work trains employed in the service of construction work

**Same—Profit on Rented Cars.**

4. The amount received by the company for its cars employed in transportation in excess of the amount paid out by it for the use of cars of other companies.

**What Are not Gross Earnings.**

The following do not come within the gross earnings tax law:

**Sales of Material.**

5. Money received for the sale of old material, supplies and equipment, or of the surplus of supplies and material not necessary for the company's own use.

**Payments for Repair of Foreign Cars.**

6. Money received from other railway companies for the repair of cars, based upon actual cost, according to a reciprocal arrangement between railroad companies.

**Miscellaneous Income.**

7. The income derived from interest or exchange from money deposited in banks, interest on securities, rentals upon the right of way, garnishee fees, commissions from insurance companies, rental from telephone companies over right of way, billboard privileges, sale of hay, stumpage, etc.

**Charges on Company's Shipments.**

8. The amount which might have been received, had the company charged itself at the usual rates for shipping its own supplies and material over its own lines.

Action in the district court for Ramsey county to recover $6,256.27, as unpaid percentage of certain items of gross earnings from the year 1899 to 1904, inclusive, which defendant company failed to return to the proper state officials for purposes of taxation. The case was tried before Olin B. Lewis, J., who found that plaintiff was entitled

[2] See opinion on page 184 for modification in respect to this item.

106 M.—12

to judgment for the amount of item 11, $1,277.92, for loading logs from the water to the cars, and for item 12, $125.93, for picking up and loading logs which had fallen from the cars en route, and ordered judgment in favor of plaintiff for the sum of $1,403.85. From the judgment entered pursuant to the findings, both parties appealed. Remanded for further proceedings in accordance with the opinion.

At the times covered by this suit the business of hauling logs was done under special contract. In each case the contract required that the log owner should load the logs and be at the entire risk of their falling off the cars while in transit. Consequently the expense of picking up and reloading fallen logs was upon the shipper.

*Edward T. Young*, Attorney General, *C. S. Jelley* and *Geo. W. Peterson*, Assistant Attorneys General, for the state.

*Charles W. Bunn*, for International Railway Company.

LEWIS, J.

The state, claiming that the Minnesota & International Railway Company failed to report the sum of $349,792.85, which should have been reported as a part of its gross earnings for the years 1899 to 1904, inclusive, brought this action to recover the gross earnings tax. The amount in controversy consists of seventeen items. The trial court found that items eleven and twelve constituted a part of the gross earnings and were taxable, but that the other fifteen items were not. Both parties appealed.

The railway company was operating under the provisions of chapter 111, p. 302, Sp. Laws 1873 (section 1667, G. S. 1894), which in part reads: " * * * and shall from and after the expiration of ten years from the said first day of January, one thousand eight hundred and seventy-two, on or before the first day of March of each and every year, pay into the treasury of this state three per cent. of the gross earnings of said railroad, and the payment of such per centum annually as aforesaid shall be and is in full of all taxation and assessment whatever. And for the purpose of ascertaining the gross earnings aforesaid an accurate account of such earnings shall be kept by said company, an abstract whereof shall be furnished by said company to the treasurer of this state on or before the first day

of February in each year." The company relies upon the case of State v. St. Paul, M. & M. Ry. Co., 30 Minn. 311, 15 N. W. 307, as decisive of the questions involved in this appeal.

In that case the charter of the Minnesota & Pacific Railroad Company was under consideration, and the act authorizing the organization of that company provided that the company should, on or before the first day of March of each year pay into the treasury of the territory or future state three per centum of the gross earnings of the railroad, and contained the following provision: "For the purpose of ascertaining the said earnings an accurate account shall be kept by said company of all receipts and expenditures on account of the operation of said railroads, and abstracts thereof shall be furnished by said company to the treasurer of the territory or state." [Laws 1857, Ex. Sess. p. 12, c. 1, subc. 1, § 18.] The court decided that the annual rental of $40,000, paid by the Northern Pacific Railroad Company for the right to run its trains over defendant's lines between certain stations, did not constitute a part of the gross earnings of the Manitoba Company, and the conclusion was based upon the ground that the express language of the act restricted the gross earnings to those receipts and expenditures on account of the operation of the railroad; and upon the further ground that, if the Northern Pacific Railroad Company was compelled to pay three per cent. upon its gross earnings received in operating that portion of the track leased, the result would be double taxation if the state were permitted to recover three per cent. upon the annual rental received by the Manitoba Company.

The statute under which respondent railway company was doing business from 1899 to 1904 did not contain any restrictive language with reference to operating the railroad. If we were disposed to make a distinction on this account in the meaning of the two acts, there is good authority for holding that under the statute involved in the present appeal all income, or earnings of whatever nature, received by the railway company should be included within the term "gross earnings." Such was the view apparently taken by the supreme court of Wisconsin in State v. McFetridge, 64 Wis. 130, 24 N. W. 140. The Wisconsin statute provided that railroads should pay, in lieu of all other taxes, a certain per centum of their gross earnings, and it

was held that rental paid for a leased railroad was included within the meaning of that term. The appellate division of the supreme court of New York (People v. Roberts, 32 App. Div. 113, 114, 52 N. Y. Supp. 859) decided that "gross earnings from its transportation or transmission business," as used in the statute, was intended to mean that all corporations embraced within the provisions of the act should pay to the state a tax upon all receipts arising from or growing out of the employment of its capital, whether that capital was employed in the transportation or transmission business, or otherwise. In Detroit v. Commissioner, 119 Mich. 132, 77 N. W. 631, the supreme court was of opinion that sums received by a railroad company for switching, rental of tracks and terminals, and interest on loans and deposits, were a part of its "gross income," and taxable as such.

However, the decision in State v. St. Paul, M..& M. Ry. Co., supra, was filed March 19, 1883. It has never been overruled or questioned, so far as our information goes, and in 1903 the legislature submitted to the people a constitutional amendment, which was adopted and became effective in 1905. Chapter 253, p. 375, Laws 1903, is the enabling act under that amendment, and is the present law upon the subject of gross earnings taxation. That amendment and act provides, in section 1, that railroad companies shall pay a sum of money equal to four per cent. of the gross earnings derived from the operation of such line of railway within this state. In view of that decision it would seem that the words of limitation would not have been inserted if it had been the purpose of the legislature and the people, in adopting the amendment, to include all receipts from whatever source. But it should not be inferred that, by introducing the words "derived from the operation of such line of railway," it was intended to apply the strict construction now contended for by respondent company. In that case the court was considering the effect of operating trains by one railway company over the tracks of another. The Northern Pacific Company had leased the right to operate its trains upon the Manitoba tracks. With reference to that particular state of facts, the court concluded it was not the intention of the act to require the lessee to pay the per centum upon the amount earned in operating trains, and at the same time require the lessor to pay upon the amount of the rental. That case is decisive upon that point, and

we have no disposition to question its correctness at this time. But we do not regard the case as conclusive upon the broader questions not then involved in the decision.

The operation of a railroad is not necessarily restricted to operating trains upon railway tracks. We believe it to have been the purpose of the legislature to require railroad companies to pay into the state treasury the stated percentage of the amount of earnings received in connection with all operations reasonably within the powers conferred upon them by the corporate acts. Such companies are organized and conducted primarily for transportation purposes, but they receive a considerable income from other sources incidental to the transportation business, though not directly from the operation of trains. We believe the proper meaning of the act under consideration to be that, when a railroad company is engaged in work reasonably within its charter powers, the receipts from such sources constitute gross earnings in the operation of the railroad. So considered, the additional reference to the operation of the road in the Minnesota & Pacific Railway Company's charter, and in the constitutional amendment, and in the act of 1903, are not significant

We now proceed to a consideration of the items involved in this controversy, which may be classified as follows.

1. The amount charged to lumber companies, and various parties, for "spotting train service," so called, embraced in item 1. The railway company furnished locomotives and crews and charged a stipulated amount per day for the use of the same in moving, transferring, and switching cars at the log loading works of the various lumber companies. Cars, engines, hoists, and general implements necessary to construct and keep railroads in repair cannot very well be kept constantly employed in the company's own work, and, when not so in use, the company should have the privilege of leasing them, and to furnish the necessary servants to handle the same, in order to earn an income therefrom, and unless such leasing, or hiring, would result in double taxation, the earnings from such sources may reasonably be considered a part of the earnings gained in the operation of the railroad. No such claim is made here, and the amount should be included.

2. The amount received from the rental or hire to other railroads, or private parties, of the company's equipment, such as steam shovels, hoisting machinery, work trains, cars and engines, including crews, etc. (Items 6, 7, 8,[3] 10, 11 and 12.) Although part of the services were performed for laying and taking up spur tracks for other parties, we perceive no difference in the character of the earnings from that source and money received for the rental of equipment and cars. Money received for services in loading cars for lumbermen cannot be distinguished upon the ground that the services were performed for the mere accommodation of shippers. It may be that the company might have required the shippers to do their own loading, but, under its charter, the company was authorized to load property received for transportation, and such work comes legitimately within the meaning of "railroad business."

3. Twenty six thousand dollars was received from the Brainerd & Northern Company and from the Northern Pacific Company for work train service in construction work for those companies. (Items 4 and 5.) If payment of the three per centum upon the amount so received would result in double taxation, then these items should not be included; but it appears from the exhibits that the amount so received was not included in the gross earnings of those companies, and we know of no reason why it should not be included in the gross receipts of appellant company.

4. The sum of $29,016.08 was received from car mileage, that is: receipts from other railway companies for the use of freight equipment. (Item 13.) Upon this question we accept the views of the supreme court of Wisconsin in the case of State v. McFetridge, supra. Where accounts are kept between different companies and charges are adjusted for such service, up to the point where the accounts balance, the operation is a mere exchange of the use of the cars, but the amount received by any company for the use of its cars in excess of the amount paid out by it for the use of the cars of other companies is one of its sources of revenue earned by its rolling stock, and should be included in the gross earnings.

5. A considerable amount of money was received from the sale of material, supplies, and equipment sold to other railway companies

[3] See opinion on page 184, for modification in respect to this item.

and other parties. (Items 2 and 3.) These items do not constitute income, or earnings, in the operation of the railroad. The buying and selling of railroad supplies was not a part of the company's legitimate business, and it will not be presumed that the company was engaged in that business. It fairly appears from the exhibits that the material referred to in these items consisted of old or worn-out cars and appliances, or of a surplus of equipment which the company had no further use for, and they should not be charged with the amount of money received in disposing of that class of material when the necessities of the business required them to constantly provide new equipment.

6. The company received $2,115.06 from labor and material in repairing cars for other railway companies. (Item 9.) According to the record it is the practice among railroad companies to make a charge for making necessary repairs of the cars of other companies on the basis of the actual cost, as per schedule in the Master Car Builders' Association rules. The arrangement is reciprocal with all railroads operated in Minnesota. This service is evidently not performed for the purpose of gaining revenue, but for the mutual benefit and protection of all railway companies and the public, to keep the rolling stock and equipment in good order. No profit is made in this class of work, and the item should not be included in the gross earnings.

7. Under the head of income other than from operation, the amount of $18,115.84 was received from interest or exchange from moneys deposited in banks located in the state of Minnesota, and also interest on securities owned by the company, and the sum of $1,270.49 was received from the leasing of property on the company's right of way, garnishee fees, commissions from insurance companies, receipts received from rental of telephone companies over the right of way, billboards, sale of hay, stumpage, etc. (Items 14 and 15.) We are not disposed to consider receipts of this character as a part of the gross earnings.

8. Items 16 and 17, amounting to about $3,500, are claimed by the state as gross earnings upon the theory that the company occupied the position of a shipper when it transported its own supplies and material over its own lines in the state of Minnesota. The company could not be required to pay itself for carrying its own material, and

it should not be charged with the amount which it would have received had the material been shipped by other companies. The law does not refer to benefits or privileges of this character.

Cause remanded for further proceedings in accordance with this opinion.

On January 8, 1909, the following opinion was filed:

PER CURIAM.

Application for reargument was granted in this case upon the question whether item No. 8, considered under division 2 of the opinion, constituted "gross earnings," within the meaning of the statute. This item consisted of gross receipts from labor and work train service and material furnished in maintaining, laying, surfacing, extending, and taking up spur tracks.

A reconsideration of this item leads us to the conclusion that our former holding was erroneous in including it among the gross earnings. The purpose of constructing and repairing spur tracks for private parties was to secure facilities for the receipt of freight at the cost price. The railway company furnished the material and constructed these spur tracks at cost, and cheaper than could be done by private parties. There was no intention to make any profit out of such transactions and this class of services is distinguishable from the rental of equipment or work trains.

To this extent the decision heretofore filed is modified.