[S. F. No. 6895. In Bank.—September 21, 1917.]

PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant, v. E. D. ROBERTS, Treasurer of the State of California, Respondent.

[S. F. No. 6896. In Bank.—September 21, 1917.]

COAST COUNTIES LIGHT AND POWER COMPANY (a Corporation), Appellant, v. E. D. ROBERTS, Treasurer of the State of California, Respondent.

TAXATION — PUBLIC SERVICE CORPORATIONS — CONSTITUTIONAL LAW.— There is no conflict between section 1 of article XIII of the constitution of California, which requires that all property in the state, "except as otherwise in this constitution provided," shall be taxed in proportion to its · value, and section 14 of the same article, which provides that public service corporations shall pay an annual tax computed by percentages of their gross receipts.

ID.—PUBLIC SERVICE CORPORATIONS—CONSTITUTIONAL LAW.—The method of taxing public service corporations on the basis of a percentage of their gross receipts is not opposed to section 11 of article I of the constitution of California, which provides that "all laws of a general nature shall have a uniform operation," because obviously the method is uniform in its application to all corporations of the same class.

ID.—PUBLIC SERVICE CORPORATIONS—TAX ASSESSABLE ON GROSS RECEIPTS FROM OPERATION.—The words "gross receipts from operation" used in constitution, article XIII, section 14, subdivision (a), are not the equivalent of gross earnings or gross profits. Those words do not contemplate deduction from the "gross receipts from operation." The clear intent was to base the tax upon the income derived from the exercise by public service corporations of functions reasonably within their charter powers.

APPEALS from judgments of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Wm. B. Bosley, for Appellant.

U. S. Webb, Attorney-General, and Raymond Benjamin, Deputy Attorney-General, for Respondent.

MELVIN, J.—As the questions involved in both appeals. are identical, we shall discuss them in an opinion applicable alike to each case. Each appeal is from a judgment.

The plaintiff, Pacific Gas and Electric Company, sued to recover $41,000.45, the amount of certain taxes assessed to that corporation for the fiscal year beginning July 1, 1911, and paid under protest. The judgment of the superior court was in favor of the defendant. The action of the other plaintiff was for the recovery of $1,693.99, paid under the same circumstances. The judgment, except in amount, was exactly the same as in the other case. We will present in detail the facts of the first case only.

This appeal is on the judgment-roll. The findings are based upon defendant's admissions contained in the answer or made at the trial, and the main question presented is whether or not the findings support the judgment. The essential findings were that plaintiff was at all times relevant to this discussion a Californian corporation engaged in the sale of gas and electricity; that on the first Monday in March, 1911, said company exclusively owned and operated certain properties used in its said business; that it was also at that time operating in its business other properties owned by subsidiary companies, among them the Suburban Light and Power Company; that during the entire calendar year ending December 31, 1910, the properties of the Suburban Light and Power Company were operated by it as an independent company and the rest of the properties aforesaid were operated by the plaintiff in conducting the business of transmitting and selling gas and electricity; that the gross receipts of the Suburban Light and Power Company from the sale of gas and electricity during the year 1910 amounted to $188,401.60, but of such gas and electricity large quantities were purchased from plaintiff for the sum of $52,717.99; that the gross receipts of plaintiff derived from the sale of electricity during that year amounted to $7,816,313.12, but of such electricity large quantities were bought from other and independent corporations for $972,-293.52; that the state board of equalization assessed to plaintiff as taxes for the fiscal year beginning July 1, 1911, upon the properties of the Suburban Light and Power Company, $7,536.06, or four per cent of the gross receipts; and as taxes upon that part of plaintiff's properties used by it in trans-

mitting and selling electricity, $312,652.53, or four per cent, and at the same time assessed to plaintiff as part of the taxes upon its own property, $2,108.71 (being four per cent of the sum of $52,717.99 paid to plaintiff by the Suburban Light and Power Company), and to plaintiff's vendors as part of the taxes upon their properties, $38,891.74, being four per cent of $972,293.52 paid by plaintiff to its vendors for electricity purchased from them. There were findings to the effect that plaintiff had tried in vain by the methods prescribed by law to have the alleged errors corrected; that such efforts were unsuccessful; and that the moneys had been paid under protest. The conclusions of law were that the gross receipts of the plaintiff and of the Suburban Company were as found by the state board, and that the assessments were legal and valid.

Plaintiff's contention is that the "gross receipts from operation," within the true meaning of subdivision (a) of section 14 of article XIII of the constitution of California, are obtained by subtracting from the entire amount realized from the sale of the commodities distributed by any one of the public service corporations therein contemplated the cost of such of said commodities as have been purchased from other companies. It is asserted that this interpretation of the cited constitutional provision is correct, because (1) the taxes there specified are upon the operative properties of the corporations; (2) such interpretation would be in harmony with section 1 of article XIII of the constitution, providing for taxation in proportion to value of property, and with section 11 of article I, requiring all laws of a general nature to have uniform operation; and (3) plaintiff's interpretation of the term "gross receipts from operation" is the ordinary and usual one.

It is argued that if the Pacific Gas and Electric Company, during the year 1910, had owned and operated the distributing systems owned and operated by the Suburban Light and Power Company during that period and had manufactured and sold to ultimate consumers, at the same price, the same quantity of gas and electricity which was sold to the Suburban Light and Power Company, the entire amount of tax which would have been assessed upon all of the property which was in fact owned during that year by the Suburban Light and Power Company and a part of the property owned by the

Pacific Gas and Électric Company would have been four per cent of $188,401.60, instead of four per cent on that sum plus four per cent of $52,717.99. In other words, appellant insists that the method followed by the state board of equalization and upheld by the court resulted in double taxation, which, according to its view, is forbidden by the constitutional provisions to which reference is made, namely, section 1 of article XIII and section 11 of article I. The effect of section 1 upon section 14 of article XIII was discussed by Mr. Justice Sloss in the unanimous opinion of this court in *Bank of California, National Assn.,* v. *Roberts,* 173 Cal. 398, [160 Pac. 225]. That was a case in which double taxation was the subject of complaint, such double taxation arising from the inclusion of the value of shares of stock in other banks owned by the bank which was taxed in reaching the value of its assessable assets notwithstanding the fact that such other shares were subject to separate assessment and taxation. At page 403 of 173 Cal., [160 Pac. 227], the following language is used:

"Does the constitution of California prohibit such double taxation as may be involved in the assessment here complained of? No doubt our constitution, as it stood prior to the amendments of 1910, did contain such prohibition. Section 1 of article XIII, as it originally read, provided that 'All property in the state, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law.' This is the language which was held, in the cases above cited, to forbid double taxation. 'All property' is not taxed in proportion to its value if some of it is taxed once and some of it more than once upon the ascertained value. (*Burke* v. *Badlam,* 57 Cal. 594.) But when the new system of taxing certain corporations for state purposes was embodied in the constitution, section 1 was also amended. That section was made to read as follows: 'All property in the state *except as otherwise in this constitution provided,* not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law, *or as hereinafter provided.'* The change consisted in the addition of the italicized words. Here is an express declaration that the general rule requiring property to be taxed in proportion to its value shall be subject to the qualification that such proportionate method of taxation shall

not apply where the constitution makes other provision. It has, as we have seen, made other provision for the assessment of bank property. The respondent claims that the words 'except as otherwise in this constitution provided' qualify merely the subject of the sentence, to wit, 'all property in the state.' In other words, the contention is that this qualifying clause was meant to cover only the exemptions specifically provided for in section 1 and subsequent sections of article XIII. This is a strained interpretation of the language. The amendments to section 1 and to section 14 were proposed and adopted at the same time, and there can be no doubt that the changes formed parts of a single comprehensive scheme. The plan of section 14 is in various respects inconsistent with the idea that the property therein described shall be assessed in proportion to its value. The taxes levied, while described as taxes upon the property of corporations, are not based upon any mode of ascertaining either the proportionate or the absolute value of such property. Thus, in subdivision (a), railroad, telegraph, telephone, gas, or electric and certain other companies are subjected to a tax of a certain percentage of their gross receipts from operations within this state. Subdivision (b) imposes upon insurance companies a tax of one and one-half per cent upon the amount of the gross premiums received. Such taxes cannot upon any fair construction be said to comply with a requirement that all property shall be taxed in proportion to its value. Surely it was not believed, when section 14 was adopted, that the method of taxation therein provided for should be limited or controlled by any general provision such as that theretofore contained in section 1. The amendment of section 1 was designed to avoid any possible conflict with section 14. Even if, however, there should be any opposition between the general terms of section 1 and the provisions of section 14, the latter, as the more specific and particular enactment, would prevail."

There is little to add to this exposition of the subject, which entirely disposes of appellant's objection to the supposed disharmony between sections 1 and 14 of article XIII.

The method followed in taxing appellant's operative property is not opposed to section 11 of article I, because, obviously, it is uniform in its application to all corporations of the same class.

But it is argued that the expression "gross receipts from operation" used in subdivision (a) of section 14 of article XIII of the constitution of California is equivalent to "gross earnings" or "gross income." This argument is based in part upon the assumption that the method of taxation of public service corporations is a substitute for the levy of *ad valorem* taxes upon their property, and that a just result may only be reached by applying the percentage fixed by law to the income from the property used exclusively in the production and distribution of the commodity sold. It is not necessary to determine whether this method of taxation which we have been discussing is solely a substitute for the exaction of *ad valorem* taxes or for those and also for occupation license, excise, and other privilege taxes, although the provision that they shall be "in lieu of all other taxes and licenses" might seem to lend some force to the latter view. In *Pacific Gas & Electric Co.* v. *Roberts,* 168 Cal. 420–424, [143 Pac. 700, 701], Mr. Justice Henshaw, who delivered the opinion of this court, after commenting upon Mr. Justice Peckham's suggestion in *McHenry* v. *Alford,* 168 U. S. 651–671, [42 L. Ed. 614, 18 Sup. Ct. Rep. 242], that such a tax is not in reality upon the gross earnings but upon the lands and other property of the company, used this language: "Without pausing here to review the decisions of the supreme court bearing upon the question, but contenting ourselves with a subsequent reference to some of them, it may be said that the conclusions of the supreme court were that property used in the public service frequently acquired a value in the use, which value was something greater than the value of the property not engaged in such use; that by the systemization and unification of such properties in use they in the aggregate acquired a special value by virtue of this unity of use; that this special value was in the nature of property; that a fair tax upon gross earnings bore such a relation to the values of these properties under their unity of use as to justify such a tax upon revenue as being a legal and commutated or substituted tax for other taxes which were or might have been levied." It thus appears and has been definitely decided by this court that the tax, whatever its scientific essence, is levied upon property created in part by the unity of use of other property. There is a unity of use in the distribution of gas and electricity sold to its consumers by such a corporation as the Pacific Gas and Electric Com-

pany, whether those commodities be produced in its own. re-
torts and by its own generators or purchased ready-made from
other corporations. The tax might be levied upon the gross
earnings (as indeed it is in some states), but we see nothing
to prevent its ascertainment by calculating a certain per cent
of the "gross receipts from operation." Either method
would be a "commutated or substituted" tax upon properties
which have acquired peculiar and special worth because of
their "unity of use." Therefore, unless the words of our
constitution, either in themselves or interpreted in the light of
custom and precedent, compel us to hold that the taxes to be
paid by appellant should have been calculated upon the
basis of gross earnings, we shall be bound to uphold the judg-
ment of the superior court.

That the words of the constitution did not contemplate de-
duction from the "gross receipts from operation" we do not
doubt. The expression first occurs in subdivision (a) of sec-
tion 14 of article XIII as follows: "Said tax shall be equal to
the percentages hereinafter fixed upon the gross receipts from
operation of such companies, and each thereof within the
state." The same form of expression is again used in the
same subdivision and in the very next sentence, which is as
follows: "When such companies are operating partly within
and partly without this state, the *gross receipts* within this
state shall be deemed to be *all receipts on business beginning
and ending within this state,* and a proportion, based upon
the proportion of the mileage within this state to the entire
mileage over which such business is done, of receipts on all
business passing through, into, or out of this state." This is
perfectly plain, unequivocal language, and it will be noticed
that the deductions from receipts upon business done partly
within the state are based not upon the cost to the company
assessed of the proportion of the service rendered or the com-
modity distributed within the state, but upon the mileage
covered. The addition of the words "from operation" to the
words "gross receipts" does not change their meaning to an
equivalent of "gross profits." On the contrary, those words
but emphasize the fact that the tax contemplated by the con-
stitution was to be levied upon the property and franchises
of corporations used exclusively in public service. Many such
corporations have investments which have no relation to the

operation of their business of supplying gas, hauling freight and passengers, and the like. The clear intent was to base the tax upon the income derived from the exercise by the corporation of functions reasonably within their charter powers. The authorities sustain this view. In *State* v. *Minnesota & International Ry. Co.*, 106 Minn. 176, [16 Ann. Cas. 426, 118 N. W. 679, 1007], in discussing a statute requiring the payment of three per centum on the "gross earnings" of a railroad, the supreme court of Minnesota said: "We believe the proper meaning of the act under consideration to be that, when a railroad company is engaged in work reasonably within its charter powers, the receipts from such sources constitute gross earnings in the operation of the railroad." In the same opinion this language is used: "There is good authority for holding that under the statute involved in the present appeal all income, or earnings of whatever nature, received by the railway company should be included within the term 'gross earnings.' Such was the view apparently taken by the supreme court of Wisconsin in *State* v. *McFetridge*, 64 Wis. 130, [24 N. W. 140]. The Wisconsin statute provided that railroads should pay, in lieu of all other taxes, a certain per centum of their gross earnings, and it was held that rental paid for a leased railroad was included within the meaning of that term. The appellate division of the supreme court of New York (*People* v. *Roberts*, 32 App. Div. 113, 114, [52 N. Y. Supp. 859]) decided that 'gross earnings from its transportation or transmission business,' as used in the statute, was intended to mean that all corporations embraced within the provisions of the act should pay to the state a tax upon all receipts arising from or growing out of the employment of its capital, whether that capital was employed in the transportation or transmission business or otherwise. In *Detroit etc. R. Co.* v. *Commissioner*, 119 Mich. 132, [77 N. W. 631], the supreme court was of opinion that sums received by a railroad company for switching, rental of tracks and terminals, and interest on loans and deposits, were a part of its 'gross income,' and taxable as such." In *Commonwealth* v. *United States Express Co.*, 157 Pa. St. 579, [27 Atl. 396], it was held that a tax upon the whole of the gross receipts of an express company is not illegal double taxation, although the amounts paid by the express company to railroad companies for transportation are included in and taxed as part of the

gross receipts of such companies.  It was held that the sums
paid by the defendant to railroad companies were paid for ser-
vices rendered to the express company, while the latter's gross
receipts were the result of services rendered by it to its cus-
tomers.   So in the case now before us the money paid by the
Suburban Company for gas in bulk was paid to appellant and
received in its capacity as a wholesale dealer, while the
amounts received by the Suburban from its customers were
paid for delivering gas to them—an entirely different service.
There is no more reason to make a deduction because the two
corporations were engaged in the same sort of business than
there would be to subtract from the grand total of plaintiff's
gross receipts the amounts paid for oil used in the manufac-
ture of gas by said corporation.   This principle is well ex-
pressed in the opinion of Mr. Chief Justice Sterrett in the
case last cited.   After quoting from the statute imposing
a tax of a certain percentage on the "gross receipts of
said company received from express business done wholly
within this state," he said: "The tax is thus laid not upon
net earnings or upon gross earnings less the amount paid
other companies for transportation services, but upon the en-
tire gross receipts of the defendant's express business done
wholly within this commonwealth.   As construed in *Philadel-
phia etc. R. R. Co.* v. *Commonwealth,* 104 Pa. St. 86, the term
'gross receipts' has been regarded as equivalent to 'gross in-
crease' or 'gross earnings.'   The defendant might, with almost
equal propriety, claim the right to deduct office expenses and
cost of local delivery service."   In *State* v. *Illinois Central
R. R. Co.,* 246 Ill. 188, [92 N. E. 814], the court was con-
sidering a provision in a charter of a railroad company re-
quiring it to pay a percentage of "the gross receipts," and it
was held that the quoted expression meant the entire income
without deduction.   In the illuminating discussion of this
subject the court cited *German Alliance Ins. Co.* v. *Van
Cleave,* 191 Ill. 410, [61 N. E. 94], wherein "gross income"
was held to be the gross receipts of the business, the court
saying that the word "gross" as used in the statute is opposed
to "net," and in its ordinary signification is applied to all of
the receipts of the business, while net receipts are those re-
maining after deductions for the expenses of conducting the
business.   (See, also, *Goldsmith* v. *Augusta & S. R. R. Co.,* 62
Ga. 468; *Dardanelle etc. Ry. Co.* v. *Shinn,* 52 Ark. 93, [12 S. W.

183]; *Philadelphia etc. R. R. Co.* v. *Commonwealth,* 104 Pa. St. 80; *People* v. *Morgan,* 114 App. Div. 266, [99 N. Y. Supp. 711]; *Commonwealth* v. *Brush Electric Light Co.,* 204 Pa. St. 249, [53 Atl. 1096].) In *People* v. *Roberts,* 32 App. Div. 113, [52 N. Y. Supp. 859], (cited *supra*), the New York statute imposing an excise tax of a given percentum upon the gross earnings of railroads was held to include earnings of every kind excepting those derived from interstate commerce. In that case the inclusion of the income derived by the relator from stocks and bonds of other corporations which had paid their corporation tax was sustained. The court said that the rule against double taxation is a rule of legislation and not of law, and while the courts will uphold an unforced construction of a statute which will result in relieving property from double taxation, nevertheless the power of the legislature to require payment of such tax is undoubted. The court of appeals affirmed the judgment on the opinion of the appellate division (*People* v. *Roberts,* 157 N. Y. 677, [51 N. E. 1093].)

We are referred to the report of the commission on revenue and taxation made in December, 1906, which outlined a system of taxing "gross earnings," and it is argued that, as the people in voting for the amendments to article XIII of the constitution were largely influenced by that report, it should be considered by this court as a construction of the words "gross receipts from operation" so powerful as to compel the conclusion that those words are the equivalent of "gross earnings." While the report is very valuable and enlightening upon the subject treated, we cannot read it into the constitution for the purpose of defining words of plain meaning. If we were to be governed by contemporaneous construction, we would have to consider also that given by the legislature to the fourteenth section of article XIII shortly after its adoption, as evidenced by section 7 of chapter 335 of the Statutes of 1911, page 533, which is in part as follows: "The term 'gross receipts from operation' as used in section two of this act is hereby defined to include *all sums received* from business done within this state, during the year ending the thirty-first day of December last preceding, including the company's proportion of gross receipts from any and all sources on account of business done by it within this state, in connection with other companies described in section two of this act."

Since this case was submitted a new statute has been passed by the legislature. It is contained in chapter 214 of the statutes enacted at the last session. Section 8 of said chapter 214 adds a new section to the Political Code, numbered 3665a, which is substantially the same as section 7 of chapter 335 of the Statutes of 1911, but with the addition of the following paragraph:

"Any company claiming that the levy of the percentage fixed by section three thousand six hundred sixty-four a of this code on the total gross receipts of such company results in double taxation of the property of such company, may make application to the state board of equalization for a hearing on such matter. Said board shall have power to take evidence and determine the facts with respect to such claim and in event said board finds the claim of such company to be true, said board may authorize such company to deduct from its reported gross receipts that amount of such receipts which, if included in such total gross receipts, would cause such double taxation."

Doubtless this measure was adopted for the purpose of providing machinery for the use of the taxing board in the event that appellants should succeed in these cases on appeal and that this court should hold in accordance with the views of counsel for the appealing corporations. In view of this decision the board will not stand in need of the authority sought to be conferred.

It follows from the foregoing discussion that the superior court correctly found against the plaintiffs in both cases.

The judgments are affirmed.

Shaw, J., Henshaw, J., Lawlor, J., Lorigan, J., and Angellotti, C. J., concurred.