## Commonwealth v. Philadelphia Electric Co.

*Frank A. Sinon*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for Commonwealth.

*Arthur H. Hull* of *Snyder, Hull, Leiby & Metzger,* for appellant.

RICHARDS, J., March 16, 1942.—This is an appeal from the settlement of the gross receipts tax of defendant for the six-month period ending June 30, 1937. The settlement was made under section 23 of the Act of June 1, 1889, P. L. 420, as amended by the Act of April 8, 1937, P. L. 245. . . . This leaves in controversy three items:

1. $6,423.36—Debit against other companies under inter-connection agreements for which no money was actually received by appellant, there being a like amount debited by such other companies against appellant.

2. $158,401.27—Reimbursement to appellant for electrical energy furnished during the six months ending June 30, 1937, under an inter-connection agreement.

3. $35,057.40—Sales of current to National banks.

In order to understand defendant's contentions with reference to items one and two, we must explain briefly the operations of the interchange agreement.

Defendant and two other companies entered into an agreement to exchange electricity. They built a transmission line in the form of a ring or loop. This ring connected with the generating and distributing facilities of each company. Each company could feed current to the loop or take it from the loop. Among the purposes was to furnish to each company the most economically generated electricity available; to meet peak demands which were not coincident; to economize in capital investment; and to confer benefits upon the consuming public. Hourly records were kept showing the amount of electricity taken from the ring by each company, and which company furnished the electricity so taken. Accounts were kept showing the respective

debits and credits resulting from the interchange of current. A company furnishing current to another was entitled to the return of the generating costs plus a share of the savings. The item of $158,401.27, mentioned above, is of this nature. If two companies had debits against each other, one could be credited against the other without the actual payment of any money. The item of $6,423.36 mentioned above is of this character, and differs in no essential respect from the preceding item.

Defendant contends that neither item should be included in the taxable gross receipts because they do not result from the electric light or power business or anything naturally incidental thereto. This court has already considered the intention of the legislature with reference to the taxation of gross receipts of electric light and power companies: Commonwealth v. Philadelphia Electric Co., 36 Dauph. 265, affirmed in 312 Pa. 528. In an opinion written by Judge Hargest, it is stated (pp. 270, 271) :

". . . the conclusion is irresistible that it meant to impose a tax on something more than electric current, and upon something less than the entire business of electric light and power companies. . . .

"Whatever is naturally incidental to the electric light and power business would be taxable."

Defendant takes the position that these receipts do not result from the sale of electric current. It is true that there is no commitment to furnish any specified amount of electricity at stated prices or at tariff rates. Yet there is a close similarity between a sale and the present transaction. A sale is usually made on terms which include the cost of production plus a profit. Here current is delivered on terms which include cost of production plus part of the savings. In both instances the revenue results directly from the delivery of current, which is the paramount purpose of the corporation.

In Commonwealth v. Philadelphia Electric Co., supra, at page 273, this court, in holding that revenues from the lease of pole rights should not be included in the taxable gross receipts, stated:

"The company's electric current is not furnished . . . We do not regard these rentals as so intimately connected with the electric light or power business as to be a part thereof and therefore hold that this item is not taxable."

Here the receipt in question does result from the furnishing of electric current.

The brief of defendant, speaking of the interchange or inter-connection agreement, states:

"It is the pooling of the generating facilities of both companies in order to enable them to generate more economically the electricity which is sold to the public which is the 'business' of the companies."

We think that this is true, but that the term "public" includes other electric companies. We think that the return from current furnished to another electric company should be included in the taxable gross receipts just as truly as the return from current furnished to an industrial consumer.

Defendant offered in evidence account no. 739 of the Uniform System of Accounts, prescribed by the Federal Power Commission, and adopted by the Pennsylvania Utility Commission, in which revenues of the character here involved are considered operating expenses. Even though the receipts in question be considered operating expenses, and disregarding for this purpose the part which represented a share of the savings, we do not think that they should be excluded from the taxable gross receipts. In one of the first cases to reach the Supreme Court involving the Act of 1889, it was contended that operating expenses should be excluded. In disposing of this contention, the court said:

"The tax is thus laid not upon net earnings or upon gross earnings less the amount paid other companies for transportation services, but upon the entire gross receipts of the defendant's express business done wholly within this commonwealth": Commonwealth v. United States Express Co., 157 Pa. 579, 584.

It has been held that the cost of electricity purchased for resale is no more deductible from gross receipts than would be the cost of raw products used in the manufacture of the current: Pacific Gas & Elec. Co. v. Roberts, 167 Pac. 845; People ex rel. Genesee L. & P. Co. v. Sohmer, 147 N. Y. Supp. 726.

We think these cases justify the conclusion that the amounts in question are not deductible from the gross receipts as operating costs. Furthermore, since defendant was incorporated for the purpose of "supplying heat, light, and power by electricity to the public in the City and County of Philadelphia, and to such persons, partnerships and corporations residing therein or adjacent thereto as may desire the same," and since the above two items resulted from doing that precise thing, we think that they were receipts from the electric light and power business. As such they should be included in the taxable gross receipts.

The only remaining question is whether receipts from sales to National banks should be excluded. Counsel for defendant relies upon a ruling of this court made in Commonwealth v. Philadelphia Electric Co., 36 Dauph. 274. It was there said (p. 275):

"We think it is too plain for serious argument that the Commonwealth is not entitled to the tax on the receipts from the sale of electricity to the United States Government . . . The same principles apply with equal force to taxation which affects an agency of the government."

This statement was made before this court definitely held that the gross receipts tax is a franchise or privilege tax: Commonwealth v. Philadelphia Electric Co.,

36 Dauph. 339. Being a franchise or privilege tax, we think the base may include receipts from sales of electricity to a National bank. In any event, a lot of water has passed over the dam since the above statement of this court was made. We now feel that the money received from sales of current to a National bank should be included in the taxable gross receipts. The present settlement imposes no tax on the bank. Any effect upon the bank is indirect and consequential. It is to be doubted that the elimination of the amount in controversy would benefit the bank in any particular. There is no discrimination against the bank. The present statute imposes no unconstitutional burden upon it.

In Western Lithograph Co. v. State Board of Equalization et al., 78 P.(2d) 731, the court was considering the California Retail Sales Act of 1933. It was contended that the act did not apply to sales of personal property to a National bank. The tax was a direct obligation of the retailer for the privilege of conducting a sales business. It was computed upon a percentage of the gross receipts. It likewise contemplated the collection of the tax by the retailer from the consumer, to wit, the bank. The court held, inter alia, at p. 737:

"It is a tax computed on the gross receipts from the conduct of the business of the retail merchant . . . Clearly the imposition of a privilege tax on the retailer of commodities does not interfere with the power of the government. . . ."

In James v. Dravo Contracting Co., 302 U. S. 134, it was held that a tax on the gross receipts of defendant, which had a contract with the Federal Government, was not an unconstitutional burden upon the Federal Government.

In Alabama v. King & Boozer, 314 U. S. 1, it was held that taxes imposed upon a contractor, having cost-plus contracts with the United States Government, did

not violate constitutional inhibitions, even though the contractor was entitled to reimbursement for materials furnished, including tax.

In Graves et al., etc., v. New York ex rel., 306 U. S. 466, it was held that the State could levy a nondiscriminatory income tax upon the salary of a New York resident employed by the Home Owners' Loan Corporation, which was assumed to be an agency of the Federal Government.

We conclude that receipts from the sales of current to National banks may be included in taxable gross receipts and that no constitutional provision is violated by so doing. . . .

### Decree nisi

And now, to wit, March 16, 1942, judgment is hereby directed to be entered in favor of the Commonwealth and against defendant for $625.60, the balance due, unless exceptions be filed hereto within the time limited by law. The prothonotary is directed to notify the parties or their counsel of this decree forthwith.