IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## MIDDLE DISTRICT—HARRISBURG. 1891.

### COMMONWEALTH v. NEW YORK, P. & O. R. CO.
#### COMMONWEALTH v. TIOGA R. CO.
#### COMMONWEALTH v. NEW YORK, L. E. & W. R. CO.
#### COMMONWEALTH v. NEW YORK, L. E. & W. C. & R. CO.

APPEALS BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF DAUPHIN COUNTY.

Argued June 1, 1891—Decided June 5, 1891.

1. The amounts received by one railroad company for the use of its railroad within this state by another railroad company, for transportation either within or through the state, are taxable at the rate of eight tenths of one per cent, as gross receipts for *tolls*, under § 7, act of June 7, 1879, P. L. 116.*

2. As the receipts for *transportation* by the company paying the tolls are taxable against that company, and the *tolls* paid are taxable against the company receiving them, it is not a case of double taxation, in violation of § 1, article IX. of the state constitution, providing that "all taxes shall be uniform," etc.

3. As the railroad, for the use of which the receipts are paid, lies wholly within this state, the tax on such receipts is not a burden imposed by the state upon the company which pays them, and therefore is not viola-

---

* Cf. Commonwealth v. Railroad Co., post, 200.

(38)

tive of the commerce clause of § 8, article I. of the constitution of the United States.

Before Paxson, C. J., Sterrett, Green, Clark, McCollum and Mitchell, JJ.

Nos. 5, 6, 7, 8 May Term 1891, Sup. Ct.; court below, Nos. 143, 144, 141, 142 January Term 1890, respectively, C. P.

On October 14, 1889, to No. 143 January Term 1890, in the court below, from an account settled by the auditor general and state treasurer against the New York, Pennsylvania & Ohio Railroad Company, for tax on gross receipts, under § 7, act of June 7, 1879, P. L. 116, for the six months ending June 30, 1889, the company filed an appeal and specifications of objections.

On April 29, 1890, the cause having been tried on a submission to the court under the act of April 22, 1874, P. L. 109, the court, McPherson, J., filed a decision referring to the decision of a like case to No. 141 January Term 1890, infra, and directed judgment to be entered for the commonwealth for $33.13, nisi, etc. On May 27, 1890, exceptions to the decision, filed by the defendant, were overruled, and judgment entered in accordance with the decision. Thereupon the defendant took the appeal to No. 5, in the Supreme Court.

To Nos. 144, 142, January Term, 1890, in the court below, in like causes wherein the commonwealth was the plaintiff and the Tioga Railroad Company, and the New York, Lake Erie & Western Coal & Railroad Company were defendants, respectively, judgments were entered in favor of the commonwealth, whereupon the defendants, severally, took the appeals to Nos. 6, 8, in the Supreme Court.

On October 14, 1889, to No. 141 January Term 1890, in the court below, from an account settled by the auditor general and state treasurer against the New York, Lake Erie & Western Railroad Company, for tax on gross receipts, under § 7, act of June 7, 1879, P. L. 116, for the six months ending June 30, 1889, the defendant company filed an appeal and specifications of objections.

At the hearing of the cause, submitted to the decision of the court, without a jury, under the act of April 22, 1874, P. L.

109, it was made to appear, inter alia, that on April 7, 1885, a contract under seal was entered into between the President, Managers and Company of the Delaware & Hudson Canal Company, of the one part, and the New York, Lake Erie & Western Railroad Company, defendant herein, of the other part, portions of which were as follows:

"8. The canal company shall pay to the railroad company trackage on the Jefferson branch of the New York, Lake Erie & Western Railroad Company, to the amount of one fourth of one cent per mile; but the total amount in any one year shall not be less than $120,000, and the same shall be payable monthly."

"16. It is further covenanted and agreed that the canal company shall have, during the continuance of this agreement, the right and privilege of running through passenger trains over and upon the Jefferson branch of the railroad company, connecting thereby and therewith the canal company's railroads situate between Scranton and Carbondale, and in Susquehanna county, with the said canal company's railroad, called the Lackawanna & Susquehanna railroad, in the state of New York, and with the Albany & Susquehanna railroad and the Rensselaer & Saratoga railroad; which through trains are to have all the rights and privileges upon said railroad, as to time tables, use of road, etc., enjoyed by or accorded to first-class express passenger trains; provided, however, that if passengers are taken thereon or delivered at any way stations on the line of said Jefferson branch, the canal company shall pay to the railroad company one half of the fares collected from such local passengers; and the canal company is to pay the railroad company, as compensation for other passengers, one cent per mile per revenue passenger, except in case excursion trains are run, when the railroad company shall be paid one half the gross fares per mile received from such passengers on such trains, and one half the revenue from express and mails, based on the earnings per train mile."

It was also made to appear that the New York, Lake Erie & Western Railroad Company was the lessee of the railroad of the Buffalo, Bradford & Pittsburgh Railroad Company; and, on October 20, 1882, entered into a contract under seal with the Buffalo, Rochester & Pittsburgh Railway Company,

whereby the latter company was authorized to use a portion of the said leased railroad, in consideration of the sum of $5,400 per annum, payable semi-annually.

On April 29, 1890, the court, McPHERSON, J., filed the following decision:

### FINDINGS OF FACT.

1. The defendant is a corporation of the state of New York, engaged in the business of transporting freight and passengers. Its railroad runs through the county of Susquehanna, in this state.

2. It leases and operates as one of its branches a railroad lying wholly within this state, known as the Jefferson branch, which extends from Carbondale to a connection with the defendant's main line in said county of Susquehanna. At Carbondale, the Jefferson branch connects with the railroad of the Delaware & Hudson Canal Company, a corporation engaged in mining and transporting coal, and also in transporting freight and passengers.

3. The canal company makes use of the Jefferson branch in the manner, for the purposes, and upon the terms specified in an agreement made April 7, 1885. This agreement is made a part of this finding.

4. Under the eighth clause of said agreement, the canal company paid to the defendant for the transportation of coal and merchandise, during the six months ending June 30, 1889, the sum of $69,462.11. Of this amount, $69,100 was in respect of coal and merchandise transported by the canal company over the said Jefferson branch, in transit to points in other states; the said coal and merchandise, when taken upon the cars and upon said Jefferson branch, being destined and intended for shipment by continuous transportation upon a single way-bill, from points in Pennsylvania to points in other states, and having been actually so transported to, and delivered at, points in other states; and $362.11 was paid in respect of coal and merchandise taken up and put down within the state of Pennsylvania. The canal company has paid to the state a tax upon its gross receipts for the transportation of the coal and merchandise, in respect of which it paid to the defendant the said sum of $362.11.

Decision of Court below.

5. Under the sixteenth clause of said agreement, the canal company paid to the defendant, the sum of $2,000, of which $1,000 was made up of half fares collected from local passengers taken up and put down within the state of Pennsylvania, and $1,000 was in respect of passengers carried inter-state by continuous transportation into, out of, or through the state of Pennsylvania.

6. The defendant also leases and operates, as one of its branches, a railroad known as the Buffalo, Bradford & Pittsburgh branch, extending from Buttsville or Gilesville, Pa., to a connection with defendant's main line at Carrollton, in the state of New York. At Crawford Junction, Pa., a point on this branch, the railroad of the Buffalo, Rochester & Pittsburgh Railway Company (formerly the Rochester & Pittsburgh Railroad Company) connects with said branch. This last mentioned corporation is engaged in the transportation of freight and passengers.

7. The Buffalo, Rochester & Pittsburgh Railway Company makes use of part of the Buffalo, Bradford & Pittsburgh branch in the manner, for the purposes, and upon the terms specified in an agreement made October 20, 1882, which agreement is made a part of this finding. The part used lies partly in this state and partly in the state of New York.*

8. Under this agreement, the amount paid to the defendant by the Buffalo, Rochester & Pittsburgh Railway Company, during the six months ending June 30, 1889, was $2,700, being one semi-annual payment. For the same period, the Buffalo, Rochester & Pittsburgh Railway Company paid to the state a tax upon its gross receipts, so far as the same were derived from transportation between points both of which are within the state of Pennsylvania.

9. This settlement taxes the entire gross receipts of the defendant from its business in Pennsylvania for the six months ending June 30, 1889, under § 7, act of June 7, 1879, and includes therein the sums paid by the canal company and by the Buffalo, Rochester & Pittsburgh Railway Company.

10. On February 10, 1890, the defendant paid to the state

---

* See the final order of the court on the exceptions filed to the decision, post, 48.

Decision of Court below.

the whole amount demanded, except the tax upon said sums of $71,462.11 and $2,700.

### CONCLUSIONS OF LAW.

The principal questions before us are these :

1st. Are the receipts derived by the defendant from the two companies named, taxable as " gross receipts for tolls and transportation ? "

2d. If so, does the tax offend in any degree against the uniformity clause of the Pennsylvania constitution, or the commerce clause of the federal constitution ?

Two other questions are also involved, and will be afterwards briefly considered.

1. Section 7 of the revenue act of 1879, P. L. 112, declares " That every railroad company, canal company, etc., . . . . owning, operating or leasing . . . . any railroad, canal . . . . or other device for transportation of freight or passengers, or in any way engaged in the business of transporting freight or passengers . . . . . shall pay a . . . . . tax of eight tenths of one per centum upon the gross receipts of said company for tolls and transportation." Are the receipts in question embraced by this language ? Clearly, they are not receipts for " transportation," as that word is here used, because the defendant does not itself carry these particular goods and passengers ; but, just as clearly, they must be said to be receipts for " tolls." This word has been defined by the Supreme Court of Pennsylvania, and we quote Mr. Justice STRONG's definition in Boyle v. Railroad Co., 54 Pa. 314 : " (Toll) is a tribute or custom paid for passage, not for carriage ; always something taken for a liberty or privilege, not for a service ; and such is the common understanding of the word. Nobody supposes that tolls taken by a turnpike or canal company include charges for transportation, or that they are anything more than an excise demanded and paid for the privilege of using the way." This definition was recognized in Cumberland V. R. Co.'s App., 62 Pa. 228, and was expressly approved in Penna. R. Co. v. Sly, 65 Pa. 205. Its terms include the payments made to the defendant under the two contracts above referred to, and determine that these payments are " tolls." Calling them " rentals " does not change their true nature as thus authoritatively defined.

2. As no argument was made by either party to this appeal,

Decision of Court below.

we do not know upon what grounds a tax upon such tolls is supposed to violate § 1, article IX. of the Pennsylvania constitution, and, for the present at least, will content ourselves with simply overruling the objection.

The other objection, viz., the alleged violation of the commerce clause of the federal constitution, we also believe to be untenable. The tax before us is not laid upon receipts for transportation, either inter-state or of any other kind, but on receipts for tolls, the sum paid by another corporation for the use of defendant's road; and we do not clearly see that this tax lays any unconstitutional burden upon commerce between the states. Indeed, it is rather the toll itself than the tax upon the toll which is the real burden; but, as this is not imposed by the state, but by the voluntary act of the parties themselves, it furnishes no constitutional ground for complaint. As we look upon it, the situation is this: The defendant has a certain piece of railroad, wholly within the state of Pennsylvania, and therefore subject to its taxing power under certain limitations. This piece of railroad is used by another corporation, which pays to the defendant a stipulated price for such use. The state, thereupon, requires the defendant to pay a tax upon the price thus paid. Is this a burden upon the business done by the corporation which pays the toll? If it be, it is so indirect that we do not believe it to be in violation of the commerce clause of the federal constitution.

It is certainly not a tax, direct or indirect, upon the toll-paying corporation, for the state demands nothing from it on this account. The demand is solely upon the toll-receiving corporation; and if it be a burden at all upon the toll-paying corporation, it must be because the price which it may be asked to pay, as such toll, may be increased by reason of the tax imposed upon the receiving corporation. But the latter has no power of itself to shift the burden upon the other. This may of course be done by agreement; but the making of such agreement is optional with two corporations, and otherwise the tax lies where it first falls. It seems to us, therefore, that as the tax upon the toll does not, either by force of the statute itself or by the necessity of the case, reach the toll-paying corporation, it cannot be said to lay a burden upon the business done by that corporation. So far as this business is concerned be-

Decision of Court below.

tween the states, no attempt is made to tax it, even when the state is dealing directly with the transporting corporation ; and the tax in question is paid upon a different subject and upon a corporation which does not even aid in the transportation. It merely furnishes the road over which the transportation is done ; it takes no active part in the business, and has no claim upon the shippers or passengers for any part of the money to be paid therefor.

Prima facie, the state may tax all the defendant's receipts for toll received by a branch lying wholly in this state ; and before an exemption as to any part thereof ought to be allowed upon the ground now taken, it should clearly appear that the tax would be a burden on inter-state commerce as carried on by the defendant. This at least, it clearly is not ; for the actual transportation is done, not by the defendant, but by another corporation for its own benefit, unless the defendant is to be considered as carrying on inter-state commerce in respect of these particular goods and passengers, merely because it allows another corporation to use its road for such transportation and itself receives a stipulated price for such use. At the best, this qualification is of doubtful soundness, and the rule then, is that " a case of simple doubt should be resolved favorably to the state law, leaving the correction of the error, if it be one, to the federal judiciary . . . . . When convinced that the state law, is really repugnant to the federal constitution, we must yield to the supreme authority of the latter: " Commonwealth v. Railroad Co., 62 Pa. 291.

The method by which the toll is to be computed and paid does not seem to us to be material. It may be fixed at a gross amount irrespective of the business done by the actual carrier, or it may be a specified sum per ton or per passenger. In either case, it is payment for " trackage," as one of the agreements calls it ; or a " toll," as the statute calls it ; and if the transportation itself is not taxed, or necessarily burdened by taxing the toll, it can make no difference whether the business done by the actual, untaxed carrier is inter-state, or is wholly within the state ; or how the payment is to be made.

3. Neither is there double taxation here. The canal company's receipts from inter-state transportation are neither taxable nor taxed, and, therefore, as to toll paid in respect of them,

Decision of Court below.

the question of double taxation could not arise. Neither does it arise as to toll paid in respect of the canal company's receipts for transportation entirely within the state; for these receipts are taxable against it as receipts for "transportation," while the sum it pays to the defendant is taxable against the latter as receipts for "tolls." These are distinct subjects of taxation and not the same subject, are taxed in the hands of distinct and separate taxpayers, and therefore the taxation is not double. In Penna. Co. v. Commonwealth, 22 W. N. 340, it was held to be double taxation to tax the capital stock of a corporation and also the shares in the hands of individual stockholders; but this result was reached either by considering the capital stock and the shares as the same subject, or by considering the corporation and the collective shareholders as the same person. Here, in our opinion, there is not identity of subject, and there certainly is not identity of person.

4. The above remarks apply also to the tolls paid by the Buffalo, Rochester & Pittsburgh Railway Company, with this difference only: that the tolls paid by this company ought to be apportioned, and only so much should be taxed as represents the sum paid for the use of that part of the defendant's Buffalo, Bradford & Pittsburgh branch, which is within the state. This apportionment may be made by the mileage rule, if the sum cannot otherwise be accurately ascertained. We will leave a blank for the proper amount, which may be filled by agreement.

Our conclusions are:

1. The rentals paid to the defendant by the canal company and by the Buffalo, Rochester & Pittsburgh Railway Company are "receipts for tolls" within the meaning of § 7 of the act of 1879.[1]

2. The taxation of such receipts does not offend against article IX., § 1, of the Pennsylvania constitution, or against the commerce clause of the federal constitution.[2]

3. Such taxation is not, in the case before us, double taxation.[3]

4. The toll received by the defendant from the Buffalo, Rochester & Pittsburgh Railway Company should be apportioned, and only so much thereof be taxed as represents the sum paid for the use of that part of defendant's branch which lies within the state.

Decision of Court below.

The sum due the commonwealth is as follows :

Tax, eight tenths of 1 per cent on $71,402.11,

    paid by the Del. & Hud. Can. Co., .   .   $571 69

And upon $1,350 paid by the B. R. & P. Ry. Co.,   10 60

Int. at twelve per cent., from Nov. 16, 1889, to

    Apr. 29, 1890,  .   .   .   .   .   .     31 63

Attorney general's commission,  .   .   .     29 11

    Total,  .   .   .   .   .   .   .   $643 03

for which amount we direct judgment to be entered, if exceptions are not filed according to law.

—To the foregoing decision, the defendant company filed exceptions alleging that the court erred :

1–3. In its conclusions of law marked.[1 to 3]

4. In not finding as a fact that, " That portion of defendant's railroad known as the Buffalo, Bradford & Pittsburgh branch, extending from Buttsville or Gilesville, Pa., to a connection with defendant's main line at Carrollton, in the state of New York, as shown in finding of fact No. 6, is used by the Buffalo, Rochester & Pittsburgh Railway Company for purposes of interstate transportation exclusively.

5. In not finding as a conclusion of law that the attempted taxation of the amount paid to defendant by the canal company, under the eighth clause of the agreement as set forth in finding of fact No. 4, particularly the item of $69,100, in respect of coal and merchandise transported by the canal company over the said Jefferson branch, in transit to points in other states, is in violation of the commerce clause of § 8, article I. of the constitution of the United States.[4]

6. In not finding as a conclusion of law that the taxation of $1,000 received by defendant from the canal company, under the sixteenth clause of the agreement, as shown in finding of fact No. 5, is in violation of said clause of § 8, article I. of the constitution of the United States.[5]

7. In not finding, as a conclusion of law, that the taxation of the $2,700, received by defendant from the Buffalo, Rochester & Pittsburgh Railway Company, for the use of its tracks, the said use being exclusively for purposes of inter-state transportation of freight and passengers, is in violation of said clause of § 8, of article I., of the constitution of the United States.[6]

Arguments.

8. In directing judgment to be entered in favor of the commonwealth for $643.03.

9. In not directing judgment to be entered in favor of defendant.

—Said exceptions having been argued, the court, McPherson, J., entered the following order:

And now, to wit, May 27, 1890, the fact is found as requested in the fourth exception, but it is immaterial. The other exceptions are overruled, and judgment directed to be entered in accordance with the opinion heretofore filed; exception.

—Thereupon, the defendant company took the appeal to No 7, in the Supreme Court, specifying that the court erred:

1–6. In overruling defendant's exceptions.[1 to 6]

8–9. In entering judgment for the commonwealth for $643.03, and in not entering judgment for the defendant.

*Mr. M. E. Olmsted*, for the appellants.

That, except as to one item, $1,000, and another one, $362.11, the receipts sought to be taxed were derived from inter-state transportation, as to which § 7, act of June 7, 1879, P. L. 116, was in violation of § 8, article I. of the constitution of the United States, counsel cited: Commonwealth v. Canal Co., 1 Mona. 36; Phila. Steamship Co. v. Pennsylvania, 122 U. S. 326; Fargo v. Michigan, 121 U. S. 230; Ratterman v. Telegraph Co., 127 U. S. 411; Western U. Tel. Co. v. Pennsylvania, 128 U. S. 39; The Daniel Ball, 10 Wall. 557; State Freight Tax Case, 15 Wall. 232; Wabash etc. R. Co. v. Illinois, 118 U. S. 557; Norfolk etc. R. Co. v. Pennsylvania, 136 U. S. 114; Sherlock v. Alling, 93 U. S. 99; Canada Southern Ry. Co. v. Bridge Co., 8 Fed. R. 190; Pensacola Tel. Co. v. Telegraph Co., 96 U. S. 1; Brock v. The John M. Welch, 2 Fed. R. 364; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196; State Tax on Gross Receipts, 15 Wall. 284; Tonnage Tax Case, 15 Wall. 232; Cook v. Pennsylvania, 97 U. S. 566; Brown v. Maryland, 12 Wheat. 419.

*Mr. James A. Stranahan*, Deputy Attorney General, ( with him *Mr. W. U. Hensel*, Attorney General, ) for the Commonwealth.

The many cases cited are all where the state taxes the trans-

porting company, in one form or another, on its transportation. Here the commonwealth does not tax the receipts of the company that carries the merchandise or passengers. The transportation is neither taxed nor restricted in any way. Between the companies, even, the amount paid by the one and received by the other is not for transportation, simply or virtually, but for trackage, or the use of the road; and the amount fixed by the agreement has to be paid, whether merchandise or passengers are carried or not.

PER CURIAM:

These cases were argued together. The opinion of the learned judge below, in No. 7 of May Term, covers substantially all the questions presented, and we affirm the judgment in each case upon said opinion.