THE CINCINNATI, MILFORD & LOVELAND TRACTION
CO. *v.* THE STATE OF OHIO.

*Taxation — Public utilities — Gross earnings — Receipts under traffic
agreement — Between interurban and street railway — Section
5418, General Code.*

Under Section 5418, General Code, "gross earnings" shall not be
subjected to reduction by subtracting the amount of rentals
paid by the company reporting to some other company, whether
such rentals be in a lump, sum or arrived at by various com-
putations as to passenger traffic, freight traffic or any other
contract or agreement that the company reporting may have
with any other company.

(No. 14944 — Decided February 29, 1916.)

ERROR to the Court of Appeals of Hamilton
county.

In 1904 The Cincinnati Traction Company was
operating and maintaining, under a franchise
granted by the city of Cincinnati, tracks and wires
from a point in the center of said city to a point
on Madison road where it intersected with an inter-
urban railroad known as The Cincinnati, Milford
& Loveland Traction Company, which latter com-

pany was maintaining and operating 28 miles of tracks and wires from said point of intersection to Blanchester, Ohio.

On the 19th day of March, 1904, the Cincinnati company and the interurban company entered into a contract, which contained among other things, these provisions as summarized by counsel:

"(1) The Traction Company agrees to furnish to the Interurban Company for the transportation of its cars from the point of intersection to the Interurban Company's passenger and freight depot in Cincinnati, tracks and electric power, the cars to be manned and operated by employes of the Interurban Company.

"(2) The Traction Company agrees to allow the Interurban Company to run its cars, passenger, freight and combination of both passenger and freight, over its said tracks and to furnish the power for the running thereof.

"(3) The Interurban Company agrees to collect not less than five (5) cents, the sum charged by the Traction Company for passage between these two points, from each passenger carried on its cars.

"(4) The Interurban Company agrees to pay to the Traction Company:

"(a) Three (3) cents out of every five (5) cents collected from passengers, and in order to prevent the indiscriminate riding on the cars of the Interurban Company of people who paid no fare, three (3) cents was to be paid for all passengers, whether or not the fare was collected.

"(b) The proportion of the gross earnings derived from such traffic (freight) on each car, as

the proportion which the car miles traveled on the line of the Traction Company bears to the total number of car miles traveled by each car on the line of both companies in the carriage of freight, and in order to prevent the indiscriminate carrying of express and freight matter free, three (3) cents per package or parcel carried as either express or freight matter free, on any of its combination cars, and further all express, freight or baggage matter carried on combination cars for charges, to be accounted for in the same manner as the accounting for freight articles carried on regular freight cars.

"(c) For advertising carried in the cars, the same proportion of earnings derived therefrom as was provided for the carrying of express and freight matter."

The two companies proceeded to operate under this agreement, and on June 30, 1911, the interurban company reported to the state its gross earnings for the year preceding said date, and deducted from the total so reported, on which it admitted its readiness to pay its excise tax, the amount it paid to the traction company under the provisions of the above-mentioned agreement. The amount so deducted, if it had been included, would have increased the amount due by way of excise tax in the sum of $237.24. The traction company included this amount in its gross earnings in its statement to the state of Ohio for the year ending June 30, 1911, and paid its taxes on the same.

The interurban company now claims that to include the same amount in its report of gross earn-

ings to the state would be a species of double taxation, against which it is protected by the constitution. It further contends that the agreement between The Cincinnati Traction Company and the interurban company was in the nature of a mere traffic agreement and that the sum of three cents per passenger was collected by the interurban company and paid over to the traction company merely as agent for the latter company, and therefore the charge should not be made against said interurban company.

The pleadings were so drawn as to raise a question of law on demurrer filed by the state of Ohio to the answer of the interurban company. The demurrer of the state of Ohio was sustained and judgment entered in its favor. This judgment was affirmed by the court of appeals of Hamilton county.

Error is now prosecuted to this judgment.

*Messrs. Gordon, Morrill & Ginter,* for plaintiff in error.

*Mr. Edward C. Turner,* attorney general, and *Mr. Clarence D. Laylin,* for defendant in error.

WANAMAKER, J. It is admitted that the tax sought to be collected in this case is what is known as an excise tax. An excise tax is a tax assessed for some special privilege or immunity granted to some artificial or natural person, based upon the grant of such privilege or immunity.

In the case of a corporation it is sometimes spoken of as a franchise tax. By reason of the fact

that the corporation is chartered by the government, endowed with unusual powers, given special immunities and limited liability, it has been repeatedly held in the various courts of the various states that such exercise of the taxing power is valid and constitutional and is not a tax upon property, but a tax on privilege, on immunity, on special favor. The sole question here is whether or not, under the statute, the several amounts paid to the Cincinnati company should have been included in the gross earnings reported by the interurban company, and it is agreed that the statutes of the state of Ohio, taken in conjunction with the agreement between the Cincinnati company and the interurban company, should determine this question.

The statutes pertaining to this controversy are as follows:

"Sec. 5418. The term 'gross earnings' shall be held to mean and include the entire earnings for business done by any person or persons, firm or firms, co-partnership or voluntary association, joint stock association, company or corporation, wherever organized or incorporated, from the operation of any public utility, or incidental thereto, or in connection therewith. The gross earnings for business done by an incorporated company, engaged in the operation of a public utility, shall be held to mean and include the entire earnings for business done by such company under the exercise of its corporate powers, whether from the operation of the public utility itself or from any other business done whatsoever."

Opinion, per WANAMAKER, J.

"Sec. 5470. Each public utility, except express, telegraph and telephone companies, and street, suburban and interurban railroad and railroad companies, doing business in this state, shall, annually, on or before the first day of August, and each street, suburban and interurban railroad and railroad company, shall, annually, on or before the first day of September, under the oath of the person constituting such company, if a person, or under the oath of the president, secretary, treasurer, or chief officer in this state, of such association or corporation, if an association or corporation, make and file with the commission a statement in such form as the commission may prescribe."

"Sec. 5473. In the case of each street, suburban or interurban railroad company, such statements shall also contain the entire gross earnings, including all sums earned or charged, whether actually received or not, for the year ending on the thirtieth day of June next preceding, from whatever source derived, for business done within this state, excluding therefrom all earnings derived wholly from interstate business or business done for the federal government. Such statement shall also contain the total gross earnings of such company for such period in this state from business done within the state."

"Sec. 5478. On the first Monday of October, the commission shall ascertain and determine the gross earnings, as herein provided, of each street, suburban and interurban railroad company whose line is wholly or partially within this state, for the year ending on the thirtieth day of June next preceding,

excluding therefrom, as to each of the companies named in this section, all earnings derived wholly from interstate business or business done for the federal government. The amount so ascertained by the commission shall be the gross earnings of such street, suburban or interurban railroad company for such year."

The foregoing sections provide in substance what shall be considered gross earnings, and under Section 5484, General Code, the company is required to pay an excise tax of 1.2 per cent. on such gross earnings.

After a careful examination of the agreement between The Cincinnati Traction Company and the interurban company we are clearly persuaded that the amount to be paid over to The Cincinnati Traction Company was in the nature of a rental for the use of the latter company's track, its motor power and terminal privileges that were used by and furnished to the interurban company in the transportation of its passengers and freight.

Section 5418, General Code, is a section of definition and therein the legislature provides what is meant by the words "gross earnings." This being a public utility corporation, the latter part of that section clearly controls, where it is provided that "gross earnings * * * shall be held to mean and include the entire earnings for business done by such company under the exercise of its corporate powers, whether from the operation of the public utility itself or from any other business done whatsoever."

In short, the paramount purpose of the state, in assessing an excise or franchise tax against a corporate public utility, evidently was to assess with reference to the amount of business done by such company, and it concluded, wisely no doubt, that as an evidence of the amount of business done it would base the assessment on the "gross earnings" of the company. If this were net earnings it would be more difficult of determination, for there would need to be deducted interest on its mortgage, or its bonds, expense of maintenance, motor power, rolling stock, office charges, etc. But the language, "gross earnings," clearly requires that no deduction shall be made for any of these or for rentals of any of its connecting lines used or operated by such public utility company, such as the interurban company in this case.

If the amount of rental due from the interurban company to the traction company were a lump sum, certainly the interurban company would not contend that such lump sum for rental to The Cincinnati Traction Company of the latter's tracks, motor power, terminals and the like, should be deducted from the other gross earnings of the company. But the mere fact that the amount is not a lump sum, but a sum arrived at by various computations as to passenger traffic, freight traffic, advertising and the like, should not make any difference in principle. The gross earnings would be determined in the same way.

The mere fact that the same gross earnings may be used as the basis of computation by two or more corporations or public utilities cannot affect the

constitutionality of the act or the legality of the method of computation. That is but an incident to corporate dealings and transactions in their business relations, one with the other, and the same sum may pass from one corporation to another during the year, and therefore must be included as business done by, or gross earnings of, each one of the several corporations.

*Judgment affirmed.*

JOHNSON, DONAHUE, NEWMAN, JONES and MATTHIAS, JJ., concur.