## STATE v. RAILWAY EXPRESS AGENCY, INC.[1]

July 3, 1941.

No. 32,720.

[1]Reported in 299 N. W. 657.

*Kellogg, Morgan, Chase, Carter & Headley, H. S. Marx,* and *J. C. Greenway,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *John A. Weeks,* Assistant Attorney General, for the State.

PETERSON, JUSTICE.

This action was brought to recover $4,653 alleged to be due as gross earnings taxes during the year 1938 on certain of defendant's receipts from railroads for services rendered. The case comes here on appeal from an order sustaining plaintiff's demurrer to the amended answer.

The facts are stated in the complaint and the amended answer.

Defendant is an express company within the meaning of the express company gross earnings tax law, 1 Mason Minn. St. 1927, §§ 2261-2269, as amended by 3 Mason Minn. St. 1940 Supp. § 2268,

which imposes a tax on express companies measured by nine per cent of their gross earnings.

The receipts in question were in payment of the contract price of certain hauling of freight in less-than-carload lot by motor vehicle over public highways. During the year 1938 the railroads paid defendant $46,999.48 for such services.

The services were of two types. One, which consisted of conveying freight from the shipper to the railroad and from the railroad to the consignee, was called pick-up and delivery service. The other, which consisted of transferring freight from one railroad to another for through movement and certain hauling from St. Paul to Minneapolis for a railroad, was known as transfer service.

Defendant performed these services with its employes, equipment, and tractive power. Incident thereto it took possession of the property which it transported. Except where the volume of freight was light, the loading and unloading of merchandise received from and delivered to railroads was done by their employes. To perform these services, defendant purchased 10 trucks, 7 tractors, and 27 trailers. It paid the motor vehicle tax on this equipment imposed by 3 Mason Minn. St. 1940 Supp. §§ 2672-2674.

The freight which defendant hauled was received by the railroads from shippers for transportation under railroad bills of lading. The railroads collected the entire transportation charges from the shipper. Defendant had no dealings with shippers or consignees concerning the freight hauled by it. It did not issue any express receipt or waybill for any freight which it moved. Its dealings were exclusively with the railroads.

The railroads included the freight receipts from the shippers in their gross earnings. They were taxed five per cent of their gross earnings under 1 Mason Minn. St. 1927, §§ 2246-2260, in lieu of all taxes.

The express company gross earnings tax law, 1 Mason Minn. St. 1927, § 2261, provides that:

"Every person, company, joint-stock association, or corporation, wherever organized or incorporated, engaged in the business of conveying to, from, or through this state, or any part thereof, money, packages, gold, silver plate, or other articles, by express, shall be deemed to be an express company."

The gross earnings of express companies are subject to a tax of nine per cent under 3 Mason Minn. St. 1940 Supp. § 2268, which reads:

"Every such express company shall be assessed a tax equal to nine per cent of its gross earnings as defined in subdivision 6 of Section 1013, Revised Laws of 1905 [§ 2262], after deducting payments to railroads for the transportation of freight as defined in subdivision 7 of said section, and the same shall become due and payable to the State of Minnesota on March 1st thereafter; and the payment of such sum at said time shall be in full and in lieu of all ad valorem taxes upon its property."

Earnings are defined by 1 Mason Minn. St. 1927, § 2262(6), as:

"The entire receipts, including all sums earned or charged, whether actually received or not, for business done within this state, including its proportion of gross receipts for business done by such company within this state in connection with other companies."

Defendant's contentions here, which are the same as those made below, are: (1) That the receipts from the railroads for the services mentioned are earnings derived from conducting a "drayage," not the express, business and hence are not subject to the express company gross earnings tax law; (2) that the compensation paid to defendant was part of the receipts of the railroads for the transportation of which defendant's services were part and that the railroads' receipts having been taxed as part of the gross earnings of the railroads under the railroad gross earnings tax law "cannot be made the basis of a second tax under the Express Companies Gross Earnings Tax Law;" (3) that the taxation of

such receipts is double taxation; (4) that such double taxation is violative of the uniformity clause of the state constitution and the equal protection clauses of the state and federal constitutions; and (5) that, since the statute does not authorize the imposition of a gross earnings tax on such receipts, the tax in question involves a taking of defendant's property without due process of law in violation of the due process clauses of the state and federal constitutions.

■ The services in question were not mere drayage. One who transports goods for a common carrier under its contracts of carriage as an essential part of the freight movement renders a common carrier service, although he has no dealings directly with consignors or consignees and issues no bills of lading, receipts, or waybills covering his part of the transportation. State v. Rock Island M. T. Co. 209 Minn. 105, 295 N. W. 519. There is authority for the view that the services in question were "express business." American Ry. Exp. Co. v. Wright, 128 Miss. 593, 91 So. 342, 23 A. L. R. 127; Alsop v. Southern Exp. Co. 104 N. C. 278, 10 S. E. 297, 6 L. R. A. 271. We do not need to decide whether or not such services technically constituted "express" business.

While the claim is made that the services constitute a business different and separate from the express business, no claim is made that rendering such services by defendant was unlawful or *ultra vires*. Whatever the nature of the services, the compensation therefor constitutes receipts and earnings of defendant—of an express company.

The construction of the express company gross earnings tax law was settled in State v. U. S. Exp. Co. 114 Minn. 346, 131 N. W. 489, 493, 37 L.R.A.(N.S.) 1127, affirmed, 223 U. S. 335, 32 S. Ct. 211, 56 L. ed. 459, in which the question was whether or not the receipts of an express company from the sale and redemption of money orders issued by it within this state were part of its gross earnings upon which the gross earnings tax was payable. We held that the sale and redemption of money orders was "banking

business." There the contention was made that an express company is taxable only on its receipts from the express forwarding business and that receipts from other lines of business conducted by an express company are not part of its gross earnings as an express company. Disposing of that contention and holding the receipts taxable, we said [114 Minn. 355]:

"It is argued by defendant that, to the extent that defendant is engaged in business other than the express forwarding business, it cannot be regarded as an express company within the meaning of the statute. *The statute defines an express company as a corporation that is engaged in the business of conveying articles by express; but it by no means follows that a corporation that is also engaged in other business is not still an express company, and liable to pay taxes on the property used in such other business.* It was and is a well-known fact that express companies sell and redeem money orders. Defendant's charter authorized it to do a banking and exchange business. No reason is apparent why the legislature should exempt from taxation the property employed in such business. *The statute does not confine the tax to earnings from transportation. It says that the company shall return a statement of its 'entire receipts * * * for business done within this state;'* " (Italics supplied.)

The contention here is like that in the cited case. The fact is that the receipts in question are those of an express company from services which it is authorized to render. It uses its property and facilities in the rendition of such services. In the cited case the receipts taxed were not derived from transportation. Here they were.

The defendant's contention that the definition of an express company by implication limits the receipts to be taxed to those received from express operations cannot be sustained. The definition designates the companies and not the operations to be taxed. The tax is upon the entire receipts of such companies. In State v. United E. L. & W. Co. 90 Conn. 452, 457, 97 A. 857, 858, in holding that electric and water companies' receipts from the sale

of apples and hay grown upon their land, for the right to take ice from their ponds, and from the sale of coke, tar, and other residual products under a statute similar to ours, were properly included in their gross earnings, the court said:

"The clear intention of the legislature, from the language used, was that companies of the class designated should pay a tax measured by a percentage of the gross earnings from all their operations. This would have been no clearer had the words 'from all sources' been inserted between the words 'gross earnings' and 'from operations in this State,' as is done in part one, which refers to railroad and street-railway corporations."

In State v. N. W. Tel. Exch. Co. 107 Minn. 390, 120 N. W. 534, receipts from special messenger service rendered by a telephone company to its patrons were held to constitute part of the taxable income of the company.

In City of Lancaster v. Briggs & Melvin, 118 Mo. App. 570, 96 S. W. 314, receipts of a telephone company from other telephone companies such as toll line business and the reasonable value of services rendered by its exchange in the transmission of long-distance business were held to be part of the gross receipts of the payee company, although all telephone companies paid a gross earnings tax on receipts from business transacted. In Commonwealth v. Philadelphia Elec. Co. 312 Pa. 528, 168 A. 318, receipts of an electric company from sales of lamps and other electrical devices, from the rental of motors, sweepers, and appliances, and from labor in connection with its jobbing and installation business were held part of the company's gross receipts under a gross receipts tax law. Many of the cases cited *infra* strongly support these views.

Defendant urges that our railroad gross earnings tax cases are decisive that the tax is limited to receipts from "express" business only and does not include those from other sources. The railroad gross earnings tax statute imposes a tax upon railroads measured by a percentage of the "gross earnings *derived from the operation*

*of such line of railway* within this state." 1 Mason Minn. St. 1927, § 2246. The tax on express companies is measured by a percentage of *"the entire receipts  *  *  *  for business done within this state."* 1 Mason Minn. St. 1927, § 2262(6). In the case of a railroad company the taxable receipts are limited to those derived from the operation of its railroad, and in the case of an express company the entire receipts for business done in the state are taxable. The difference is that in the one case receipts from a particular part of the business—that is, railroad operation, are taxed; in the other the entire receipts from all business transacted in the state are taxed. Hence cases holding that railroads are taxable on earnings derived from *railroad operations* such as State v. St. P. M. & M. Ry. Co. 30 Minn. 311, 15 N. W. 307; State v. N. P. R. Co. 32 Minn. 294, 20 N. W. 234, and others cited herein, are not in point under the statute here involved. The language of the express company gross earnings law is broader and more comprehensive than the railroad gross earnings act. Its scope is such as to include all the earnings of an express company. State v. U. S. Exp. Co. 114 Minn. 346, 131 N. W. 489, 37 L.R.A.(N.S.) 1127, *supra.*

Furthermore, our early decisions in the railroad gross earnings tax cases have been limited by our decisions in State v. M. & I. Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426, and later cases so that our cases involving the railroad gross earnings tax law are not authority for the rule that only receipts from the operations of a corporation's principal business are taxable. In that case we pointed out that the authorities in other jurisdictions sustain the view that all income of whatever nature received by a railroad should be included within the term gross earnings, citing Detroit G. R. & W. R. Co. v. Commissioner, 119 Mich. 132, 77 N. W. 631; People ex rel. N. Y. C. & H. R. R. Co. v. Roberts, 32 App. Div. 113, 52 N. Y. S. 859 (affirmed, 157 N. Y. 677, 51 N. E. 1093); State ex rel. Abbot v. McFetridge, 64 Wis. 130, 24 N. W. 140. After our decision in the case of State v. St. P. M. & M. Ry.

Co. *supra,* the people adopted a constitutional amendment for a tax of four per cent on the gross earnings of railroads derived from the operation of such line of railway within this state. We held that the prior construction of the statute was adopted, but that such construction was limited to the holding of the St. P. M. & M. Ry. Co. case that rent received by one railroad from another for operating trains on its tracks was not income derived from the operation of the railroad, but that the case was not conclusive upon the broader questions not involved in the prior decision. We said [106 Minn. 181, 118 N. W. 680]:

"We believe the proper meaning of the act under consideration to be that, when a railroad company is engaged in work reasonably within its charter powers, the receipts from such sources constitute gross earnings in the operation of the railroad."

Applying the rule, we held to be taxable as gross earnings income not derived from the operation of trains such as receipts from lumber companies for switching cars, from other railroad companies for the use of work trains employed in construction work, and rentals received from other railroads in excess of the amount due to them for the use of cars. The rule thus limited and explained has been applied in such recent cases as State v. Illinois Cent. R. Co. 200 Minn. 583, 274 N. W. 828, 275 N. W. 854; 205 Minn. 1, 621, 284 N. W. 360, 286 N. W. 359, affirmed, 309 U. S. 157, 695, 60 S. Ct. 419, 585, 84 L. ed. 670, 1035; and State v. M. & St. L. R. Co. 204 Minn. 250, 283 N. W. 244.

The express company gross earnings tax law shows that the legislature fully considered what deductions were permissible in determining gross earnings. Broad and comprehensive language admitting of no exclusions was used to include the entire income of such companies from business done in this state. Absent a clause authorizing the deduction of payments to railroads for transportation of freight, no such deduction was permissible. Commonwealth v. U. S. Exp. Co. 157 Pa. 579, 27 A. 396. Section 2268 authorizes such a deduction. By expressly providing for one de-

duction and using language admitting of no others, all other deductions are excluded.

The receipts from the services rendered by defendant to the railroads were part of its gross earnings and hence subject to the tax in question.

■ Inclusion in each instance of the receipts for the entire freight movement in the gross earnings of the railroads for purposes of computing their gross earnings taxes does not prevent the inclusion of defendant's receipts from the railroads for services rendered as part of such movement in its gross earnings for purposes of computing its tax. Defendant's argument to the contrary is in effect that the railroad gross earnings tax is a tax on receipts and that the tax on a receipt covers all taxes for the transportation service for which the receipt was paid against the railroad and others participating in such service. Therefore it is argued that including receipts for the entire freight movement in the railroad's gross earnings for taxation covered the tax on the entire freight movement as to the railroads and defendant.

The fundamental error in this argument is the baseless assumption that the tax in question is on receipts or income. It is settled beyond argument that the gross earnings taxes on railroads and express companies are not taxes upon the earnings of the companies, or upon the companies, or their franchises, but are taxes upon the property of the companies within the state which are measured by their gross earnings. State v. U. S. Exp. Co. 114 Minn. 346, 131 N. W. 489, 37 L.R.A.(N.S.) 1127, affirmed, 223 U. S. 335, 32 S. Ct. 211, 56 L. ed. 459. (See criticism of the rule in Blakey, Taxation in Minnesota, p. 326.)

A tax on a railroad's property measured by a percentage of its gross earnings is not the same as a tax on the earnings themselves. The former is a property tax. A tax on a railroad's earnings as such is an income tax, which is unconstitutional since the property tax measured by a percentage of the gross earnings is, under the constitution, in lieu of *all* taxes against a railroad. State v. D. M.

& N. Ry. Co. 207 Minn. 618, 292 N. W. 401. For like reasons, the receipts or earnings of an express company are not taxable as such, since under § 2268 the payment of the gross earnings tax by an express company is in full and in lieu of all taxes and assessments upon its property, except the motor vehicle tax under 3 Mason Minn. St. 1940 Supp. §§ 2672-2674, enacted pursuant to authorization under Minn. Const. art. 16, § 3, as amended in 1932, which tax we recently sustained in State ex rel. Ry. Exp. Agency, Inc. v. Holm, 209 Minn. 9, 295 N. W. 297. State v. U. S. Exp. Co. *supra.* The freight receipts in question were not taxed as such. Neither the railroad nor defendant paid a tax on such receipts. Hence the payment of the railroad gross earnings tax did not cover all taxes on the receipts from the entire freight movement as to both the railroads and defendant.

It necessarily follows that payment by a railroad of its gross earnings tax operates only as payment of its property tax. In County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942, a railroad which paid the gross earnings tax for the years 1885 and 1886 conveyed certain lands on April 15, 1885, and June 17, 1886. The grantee in each case claimed that the payment of the gross earnings tax was payment of the tax on his land. The statute then, as now, fixed May 1 as the date for determining the taxability of property and its ownership and value for purposes of taxation for the year. Mr. Justice Mitchell said in disposing of the contention [40 Minn. 138]:

"The percentage of gross earnings paid by the company is merely the equivalent of the tax it would have to pay had a tax *in specie* been assessed. *In other words, it is a commuted payment of its own tax, and not that of somebody else.*" (Italics supplied.)

Consequently we held that the payment of the gross earnings tax operated as payment of the tax on the property owned by the railroad on May 1—that is, the land conveyed on June 17, but not on the land of its grantee conveyed on April 15. The only importance of the railroad's earnings is that they afford the basis upon which

the percentage is computed which measures its property tax. For all practical purposes, the case is no different than the payment of property taxes assessed against tangible property in specie. No one would contend that a disbursement by an ordinary property owner would have any bearing whatever on the property or income taxes of the recipient of the disbursement. Such an argument would be manifestly absurd. The necessary consequence is that an operating earning received by a gross earnings taxpayer from another gross earnings taxpayer is the same as an earning received from any other source. As to the paying company, such a payment is an operating expense. State v. M. & St. L. R. Co. 204 Minn. 250, 283 N. W. 244.

Defendant's argument encounters other difficulties for which no answer has been attempted. The rate of the tax is *five* per cent on railroads and *nine* per cent on express companies. The statutes clearly require each company's tax to be measured at the stated rate. Just how a tax at the rate of five per cent can operate as payment of a tax at nine per cent has not been, and it cannot be, shown.

■ Double taxation is objectionable in a legal sense only when the same property or person is taxed twice for the same purpose for the same taxing period by the same taxing authority without taxing all property and persons in the same class a second time. Klemm v. Davenport, 100 Fla. 627, 129 So. 904, 70 A. L. R. 156; C. F. Smith Co. v. Fitzgerald, 270 Mich. 659, 259 N. W. 352; Commonwealth v. Westinghouse Air Brake Co. 151 Pa. 276, 24 A. 1111, 1113; 1 Cooley, Taxation (4 ed.) § 223.

The claim that the receipts were twice taxed—once against the railroads and again against the defendant—is without any basis, since the receipts were not taxed at all either against the railroads or defendant. We are dealing with property taxes measured by a percentage of gross receipts. The railroads and the defendant paid their property taxes by such lieu taxes. There can be no double taxation, where each taxpayer pays only his own tax. County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942.

A gross earnings taxpayer's income from another gross earnings taxpayer is not doubly taxed where each of them derives income in respect to the same commodity or service, since neither the same earning nor the same taxpayer is thereby taxed twice. 1 Cooley, Taxation (4 ed.) § 243, note 41. For example, the taxation of car rentals—that is, the excess due from one railroad to another on the exchange of use of cars—is included in the gross earnings of the railroad receiving the rentals although the paying road included the earnings from its use of the cars in its gross earnings. State v. Illinois Cent. R. Co. 200 Minn. 583, 274 N. W. 828, 275 N. W. 854; 205 Minn. 1, 621, 284 N. W. 360, 286 N. W. 359, affirmed, 309 U. S. 157, 695, 60 S. Ct. 419, 585, 84 L. ed. 670, 1035; State v. M. & St. L. R. Co. 204 Minn. 250, 283 N. W. 244; State v. M. & I. Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426. Likewise, the receipts of a freight line company of rental from a railroad for the use of its cars are included in its gross earnings although the railroad includes the revenues from the use of such cars in its gross earnings for purposes of taxation. State v. Cudahy Packing Co. 129 Minn. 30, 151 N. W. 410, affirmed, 246 U. S. 450, 38 S. Ct. 373, 62 L. ed. 827.

The rule is illustrated where the tax relates to receipts from the sales of commodities. In In re Merchants Refrigerating Co. v. Taylor, 275 N. Y. 113, 9 N. E. (2d) 799, the city of New York imposed a gross earnings tax on public utilities and a general sales tax, which were authorized under a general statute with a proviso that there should not be more than one tax on such gross earnings. The sales tax local law contained a provision that the seller shall be liable for the amount of the taxes on all its sales. The question was whether imposing liability on the utility for the gross earnings tax and the sales taxes on refrigeration sold by it as a utility constituted double taxation. The court held that the utility was not taxed twice on its gross receipts, once by the utility and again by the sales tax, since the taxes were imposed on different taxpayers, the utility tax on the utility and the sales tax on

the purchasers of refrigeration. Here the railroad gross earnings tax is a tax on its property, and the express company gross earnings tax is a tax on its property.

There is no double taxation of the receipts from the sale of electricity by a gross earnings tax on electric companies under which the receipts of the manufacturing company from the sale of electricity to a 'distributing company and the distributor's receipts from the sale of the same electricity to its customers are included in the gross earnings of the respective companies for taxation purposes, since neither the same taxpayer nor the same earning is twice taxed. People ex rel. Genesee L. & P. Co. v. Saxe, 179 App. Div. 486, 165 N. Y. S. 938 (affirmed, 223 N. Y. 690, 119 N. E. 1069); People ex rel. Genesee L. & P. Co. v. Sohmer, 162 App. Div. 207, 147 N. Y. S. 726 (affirmed, 212 N. Y. 598, 106 N. E. 1040).

In Commonwealth v. N. Y. P. & O. R. Co. 145 Pa. 38, 22 A. 212, it was held that there was no double taxation of the receipts of a canal company under a statute taxing railroads and canal companies at a percentage of their gross receipts for toll and transportation, where the receipts of the canal company for transportation were included in its gross receipts and tolls paid by the canal company to the railroad for the use of its tracks were included in the railroad's gross receipts, since there was neither identity of the subject or the person taxed.

Conversely, a gross earnings taxpayer is not entitled to deduct from its gross earnings payments made to another gross earnings taxpayer in respect to the subject matter out of which the earnings of each arise. C. M. & L. Traction Co. v. State, 94 Ohio St. 24, 113 N. E. 654; Commonwealth v. U. S. Exp. Co. 157 Pa. 579, 27 A. 396; Peninsula Transit Corp. v. Commonwealth, 165 Va. 614, 183 S. E. 446.

The cases in which we have held that certain receipts should not be included in the gross earnings of railroads for purposes of computing the gross earnings tax are not in point. In State v. St. P. M. & M. Ry. Co. 30 Minn. 311, 15 N. W. 307, we held that double

taxation resulted from including in a railroad's gross earnings rentals received from another railroad for running trains over its tracks for the reasons that a railroad's gross earnings included only income derived from the operation of the railroad and did not include such track rentals and that, since the payment of the gross earnings tax on gross earnings thus defined was in lieu of all taxes, the inclusion in gross earnings of the nongross earnings item of track rental unlawfully increased the tax and was *pro tanto* double taxation. Here the items in question are part of the defendant's gross earnings. Consequently there is no inclusion of nontaxable items therein and no double taxation.

In State v. St. P. Union Depot Co. 42 Minn. 142, 146, 43 N. W. 840, 842, 6 L. R. A. 234, a union depot company incorporated under special laws as an agency of the railroads owning its stock and using its facilities was held not liable for the railroad gross earnings tax upon the ground that the payment of their gross earnings taxes by the railroads constituted payment of the taxes on the property of the depot company. We said:

"If the railway companies had owned and used this depot as tenants in common, the percentage on their gross earnings payable to the state would have been the same as now, and yet that percentage would have paid the taxes on the depot the same as on any other property held and used by them for railway purposes. We cannot see what difference it can make whether they hold the depot property as tenants in common, or put it in the name of a trustee to hold and manage for their common use, or, as in this case, organize a corporation for the same purpose, as a more economical and convenient method of holding the property, managing the business and apportioning the expenses among themselves. The state plants itself on the technical ground that defendant is a separate and independent legal entity, and that we have no right to consider the functions which it performs, or the relations which it bears to the railway companies who own its stock and use its depot. We think this is too narrow and technical

a view of the case. When evasions have been resorted to by railway companies or others to escape taxation, we have unhesitatingly looked through the external form or dress to the substance of the transaction, and the same rule should be applied against the state."

Defendant's stock is not owned by nor is it an agency of the railroads which employ it. Its property is not their property. The relationship between the railroads and defendant in this respect is no different than that between them and any other motor carrier whom they might hire to perform a service for them.

Receipts from services performed by one railroad for another at cost with no intention of gaining revenue or making profit, such as payment for repairs of cars at actual cost under reciprocal arrangements between railroad companies involved in State v. M. & I. Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426, and performing certain freight-house and stevedoring services for other carriers at actual cost involved in State v. N. P. Ry. Co. 130 Minn. 377, 153 N. W. 850, 851, are entirely different from those which defendant received from the railroads for the services in question. Defendant did not render such services at cost. It contracted to render such services for a price. The receipts in the cited cases were simply reimbursement for outlay on account of the payor. The payee derived no income therefrom. In State v. N. P. Ry. Co. *supra,* we said "that the moneys by it [the railroad] received represent the actual cost of the service rendered and no more and that *in effect it is merely the hiring and disbursing agent for the other roads."* It would be idle to contend that defendant was acting as the hiring and disbursing agent of the railroads.

In State v. C. R. I. & P. Ry. Co. 181 Minn. 615, 232 N. W. 105, 107, 233 N. W. 866, it was held that including certain excess Pullman fares received by the railroad from the sleeping car company under contract in the railroad's gross earnings would be double taxation. The Pullman company and the railroad together rendered passenger transportation service. The former furnished

and serviced sleeping and parlor cars. The railroad transported passengers in such cars. The Pullman company charged passengers a regularly established fare for the use of its cars. The railroad charged passengers the regular passenger fare plus a surcharge of one-half of the Pullman carfare. The contract between the railroad and the Pullman company provided that the latter would pay to the former as excess Pullman fares all gross earnings from its sleeping cars operated over the railroad in excess of $7,250 up to $8,750 per year and one-half of the excess over $8,750. Sleeping car and railroad companies were taxed at the same rate, viz., five per cent, under separate laws. Each company reported the fares which it charged and collected as part of its gross earnings and paid the gross earnings tax thereon. The amount of the Pullman excess fares was included in the gross earnings of that company. The railroad did not include them in its gross earnings.

By a process of statutory construction we held that payment by the railroad and the sleeping car company of the gross earnings taxes constituted *full* payment of their respective property taxes measured by a percentage of such gross earnings and that any further tax after such payment of taxes in full constituted *pro tanto* double taxation of the property. This result was reached by construing the two statutes to be practically the same and supplementary and that each company's earnings for measuring its property tax by the gross earnings method consisted of the amounts charged to and collected from passengers by each company. Thus, it was stated, the entire receipts of both companies for the transportation service were apportioned to each company according to what it charged and earned. We said [181 Minn. 620]:

"When the railroad company paid the gross earnings tax upon all its gross earnings, except these earnings [the excess Pullman earnings] of the Pullman cars, and the Pullman Company paid the gross earnings tax upon all its earnings, including that part of the earnings thereafter paid to the railroad company, the state then had received full payment of taxes for the period covered, upon

all the property, both of the railroad company and the Pullman Company, subject to taxation in this state."

We held that the excess Pullman earnings should not be included in the railroad's gross earnings not because such earnings had been once taxed in the hands of the Pullman company and could not be again taxed in the hands of the railroad, but because the property taxes of each company had been paid in "full" in the manner described and there was therefore no further tax to be paid by the railroad.

The question of statutory construction here arises from entirely different facts with respect to which our decisions prior and subsequent to the Rock Island case [209 Minn. 105, 295 N. W. 519] have settled the rule that such income is part of defendant's gross earnings. Here the income is not excess earnings as in the cited case. There each company earned its separate income from the passenger by rendering its own service, for which it charged and collected its own fare. In the instant case, there was only one service rendered to the shipper, which was the freight movement by the railroads. Defendant rendered no service to shippers, its service was to the railroads. One charge for a single service, not two for two separate services, at the regular tariff freight rates, was made and collected by the railroads. Defendant's income from the railroads is no different in principle than that of one railroad from another, which are part of the gross earnings of the railroad receiving the same under our settled rule.

In the Rock Island case the applicable statutes in effect apportioned the separate revenues from the separate business to the sleeping car and railroad company in accordance with their business practice. Such revenues were held to represent the earnings of the properties of the respective companies for gross earnings tax purposes. There is no basis for such a construction here for lack of separate services and separate charges collected therefor by defendant and the railroads. The income involved here is part of defendant's gross earnings under the rule established in State

v. M. & I. Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426, decided prior to the Rock Island case, and followed in State v. Illinois Cent. R. Co. 200 Minn. 583, 274 N. W. 828, 275 N. W. 854; 205 Minn. 1, 621, 284 N. W. 360, 286 N. W. 359, affirmed, 309 U. S. 157, 695, 60 S. Ct. 419, 585, 84 L. ed. 670, 1035; and State v. M. & St. L. R. Co. 204 Minn. 250, 283 N. W. 244, decided subsequent thereto. The Rock Island decision is confined to the peculiar facts of that case and has not overturned the well settled rule applicable to the instant case.

Once we concede, as we held in the Rock Island case, that the gross earnings taxes based upon the separate earnings of each company according to the business practice of the companies sanctioned by the statutes were in *full* of all taxes of both companies, any further tax on revenues was *pro tanto* double taxation and unauthorized. There is no basis here—no matter what view we adopt—for saying that the express company's gross earnings tax could be paid in full unless it included its earnings from the railroads. The cases differ so radically in point both of law and fact that the cited case cannot be deemed to be in point.

The employment of the express company by the railroad was a fortuitous and not a determinative circumstance. Had the railroads employed other than the express company to do the involved trucking, there would have been no resulting change in the tax liability of either employers or employes. So here, the express company is entitled to no reduction in the tax upon its property simply because it is hired to do work for the railroad companies. The amounts received by the express company from the railroads are just as much taxable gross earnings as they would have been had the service been performed for others who were not taxed under the gross earnings system.

In the last analysis, defendant's argument assumes that a railroad's earnings are taxed in specie and that payment of the railroad's tax renders money expended by it immune from further taxation. The fallacy of these assumptions has been sufficiently

explored. The dollar spent by a gross earnings taxpayer is not stamped as tax-free thereafter. Tax laws exact from property wherever it may be found a contribution for the support of government without respect to the owner or his occupation, Finley v. City of Philadelphia, 32 Pa. 381, or the prior exaction of a tax in respect to it in the hands of a former owner, C. M. & L. Traction Co. v. State, 94 Ohio St. 24, 113 N. E. 654. See People ex rel. Genesee L. & P. Co. v. Saxe, 179 App. Div. 486, 165 N. Y. S. 938 (affirmed, 223 N. Y. 690, 119 N. E. 1069) and People ex rel. Genesee L. & P. Co. v. Sohmer, 162 App. Div. 207, 147 N. Y. S. 726 (affirmed, 212 N. Y. 598, 106 N. E. 1040).

There was no double taxation.

■ The contention that including the receipts in question in defendant's gross earnings for purposes of taxation results in violation of the uniformity clause of the state constitution and the denial of equal protection of the law in violation of the due process clauses of the state and federal constitutions is bottomed upon claimed double taxation. Since there is no double taxation here, there is no basis for the contention. See C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 297 N. W. 9.

■ Taking of defendant's property without due process of law is claimed to result from the fact that the statute does not require the inclusion of the receipts in question in defendant's gross earnings; that taxation based upon such inclusion is without legal authorization; and that if the tax thus asserted is enforced defendant's property is taken to pay the tax without authority of law. The claim is disposed of by our holding that the statute requires the inclusion and authorizes such taxation. The question of due process was considered at length in State v. U. S. Exp. Co. 114 Minn. 346, 131 N. W. 489, 37 L.R.A.(N.S.) 1127, affirmed 223 U. S. 335, 32 S. Ct. 211, 56 L. ed. 459, with decision adverse to defendant's claim.

The receipts in question were part of defendant's gross earnings for purpose of the gross earnings tax.

Affirmed.